# 26-1302(L)
## 26-1556 (CON)

### United States Court of Appeals
### for the Second Circuit

ASHLEY C. KELLER, KELLER POSTMAN LLC,

*Interested Parties–Appellants,*

v.

JOHNSON & JOHNSON CONSUMER INC., n/k/a KENVUE BRANDS LLC,

*Defendant–Appellee.*

On Appeal from the United States District Court
for the Southern District of New York

**BRIEF FOR THE STATE OF TEXAS
AS AMICUS CURIAE IN SUPPORT OF APPELLANTS**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

WILLIAM R. PETERSON
Solicitor General
William.Peterson@oag.texas.gov

*Counsel for the State of Texas as Amicus Curiae*

# TABLE OF CONTENTS

Page

Table of Authorities ....................................................................................... ii

Interests of Amicus Curiae.............................................................................. 1

Argument of Amicus Curiae ............................................................................ 2

    I.   Appellants Did Not Disclose the Substance of Documents
        Subject to the Protective Order in the Texas Action. ............................... 3

    II.  The Protective Order Does Not Unambiguously Prohibit Filing
        Fully Redacted Copies of Documents Produced in the MDL. .................... 5

    III. The District Court Erred in Inferring Willfulness Based on the
        Florida Action.......................................................................................11

Conclusion ................................................................................................... 12

Certificate of Compliance ..............................................................................13

i

# Table of Authorities

Page(s)

**Cases:**

*Astor v. Merritt*,
111 U.S. 202 (1884) ..................................................................................... 6

*Bailey v. United States*,
516 U.S. 137 (1995)...................................................................................... 5

*City of Fort Collins v. Open Int'l, LLC*,
No. 21-CV-02063, 2022 WL 7582436 (D. Colo. Aug. 16, 2022)......................... 7

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
10 F.3d 693 (9th Cir. 1993) ........................................................................... 7

*E.E.O.C. v. Local 638*,
81 F.3d 1162 (2d Cir. 1996) ........................................................................... 2

*Grace v. Ctr. for Auto Safety*,
72 F.3d 1236 (6th Cir. 1996) ...................................................................... 8, 9

*Milwaukee Elec. Tool Corp. v. Snap-on Inc.*,
No. 14-CV-1296, 2016 WL 1719657 (E.D. Wis. Mar. 16, 2016)......................... 7

*Misys Int'l Banking Sys., Inc. v. TwoFour Sys., LLC*,
800 N.Y.S.2d 350, 2004 WL 3058144 (Sup. Ct. Nov. 23, 2004) ........................ 6

*PepsiCo, Inc. v. Redmond*,
54 F.3d 1262 (7th Cir. 1995) .......................................................................... 6

*Perez v. Edwards*,
No. 20-CV-1359, 2023 WL 5935029 (S.D.N.Y. Sept. 12, 2023) ........................ 8

*Principle Sols. LLC v. Feed.Ing B.V.*,
No. 13-C-223, 2015 WL 113292 (E.D. Wis. Jan. 8, 2015) ............................. 7, 8

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
192 F. Supp. 3d 400 (S.D.N.Y. 2016) .............................................................. 8

*Shanchun Yu v. Diguojiaoyu, Inc.*,
No. 18-CV-7303, 2019 WL 6174204 (S.D.N.Y. Nov. 20, 2019)......................... 8

*Smith v. United States*,
508 U.S. 223 (1993)................................................................................... 5, 8

*Static Media LLC v. Leader Accessories LLC*,
38 F.4th 1042 (Fed. Cir. 2022) ....................................................................... 7

*United States v. Local 1804-1, Int'l Longshoremen's Ass'n*,
44 F.3d 1091 (2d Cir. 1995) ........................................................................... 2

**Other Authorities:**

Black's Law Dictionary (6th ed. 1990) ................................................................... 5, 6

Webster's New International Dictionary (2d ed. 1939) ........................................... 6

iii

## INTERESTS OF AMICUS CURIAE

The State of Texas is Appellants' client in the Texas state court proceedings in which Appellants engaged in the conduct that led to the imposition of sanctions, and the Office of the Attorney General of Texas serves as co-counsel in those proceedings.[1] The State has an interest in ensuring that its outside counsel can effectively and fully advocate on its behalf without the risk of sanctions by another court. The State thus has a strong interest in maintaining the high standards for the imposition of sanctions so that its counsel are not deterred from providing the vigorous and zealous representation that Texas is entitled to receive.

In addition, the imposition of sanctions from an MDL court creates a risk that in future cases, the State will be unable to retain counsel of its choice when it files a related consumer protection lawsuit. To avoid being accused of misusing discovery materials from an MDL, counsel may well choose to forgo representing clients in related proceedings, depriving the State of the opportunity to retain the most experienced and knowledgeable counsel in the area.

---

[1] Undersigned counsel has not appeared in the Texas state proceedings.

1

# ARGUMENT OF AMICUS CURIAE

The State makes three points. First, the redacted documents filed by Appellants disclosed the existence of the material covered by the Protective Order and described it only at a very high level of generality. From the vague description in Mr. Keller's affidavit, no person could determine the contents of any document or material produced in the MDL or any confidential MDL information. Appellants did not provide unredacted copies of this material to the State, to the Office of the Attorney General, or to the Texas court.

Second, whether the Protective Order prohibited Appellants' filings is ambiguous. Standing alone, the word "use" is potentially broad. Extended to its outer limits, Appellants would be unable to represent the State of Texas in the Texas litigation because of the knowledge they acquired from the MDL in which the State is not a party. The Protective Order does not unambiguously prohibit filings that do not disclose the substance of any document or any protected information.

Third, even if Appellants violated the Protective Order, the relationship between Appellants' actions in Florida and Texas suggests good faith, rather than willfulness as the district court incorrectly inferred.

Although this Court reviews a district court's order imposing sanctions for an abuse of discretion, its review "is more rigorous than would be the case in other situations in which abuse-of-discretion review is conducted." *E.E.O.C. v. Local 638*, 81 F.3d 1162, 1171 (2d Cir. 1996) (quoting *United States v. Local 1804–1, Int'l Longshoremen's Ass'n*, 44 F.3d 1091, 1096 (2d Cir. 1995)).

2

## I. Appellants Did Not Disclose the Substance of Documents Subject to the Protective Order in the Texas Action.

The district court's order stated that Appellants "filed . . . a redacted opposition brief and supporting affidavit and a motion for leave to file unredacted documents that relied on or summarized confidential MDL information." A-884.

The order does not quote any portion of the opposition brief that it suggests violates the Protective Order. Two sentences in the motion for leave discuss what MDL discovery "shows": "[T]he discovery produced [in the MDL] shows that Defendants are subject to personal jurisdiction in Texas [and] that the State has pleaded sufficient facts to survive a motion to dismiss." A-878 (quoting the motion; second and third alterations in original). And one sentence in Mr. Keller's affidavit summarizes MDL discovery only at the highest level of generality: "Discovery in similar cases shows Johnson & Johnson directly participated in the failure to warn about risks associated with Tylenol." A-877. The sentences of Mr. Keller's affidavit describing MDL discovery and the discovery attached as exhibits were fully redacted.

These portions of the filings quoted by the district court constitute the entirety of the disclosure by Appellants. Appellants never provided unredacted copies of the filing to the State or to the Office of the Attorney General, meaning they did not violate the Coordination Order. *See* A-607 (Coordination Order prohibiting the provision of protected materials to counsel in a coordinated action unless certain criteria are met). Nor did Appellants provide unredacted copies to the Texas court or indeed to anybody else (other than Kenvue in response to Kenvue's request). *See*

3

A-768 (Masslon Decl.) ("I did not serve or otherwise transmit the unredacted versions of the State's opposition brief, affidavit, or supporting exhibits to the court, to the court's staff, to co-counsel, or to any party other than Kenvue.").

The district court stated that "[t]he filings made arguments about what the confidential documents show, referred to the substance of the redacted confidential information, and blacked out swaths of quoted material, which served to highlight the extent of the confidential information." A-889. The first two clauses appear to refer to the sentences quoted above, which "referred to" but did not disclose the substance of the redacted confidential information. And "highlight[ing] the extent of the confidential information" seems merely to acknowledge that confidential information had been produced, not disclose its substance.

Although Appellants sought leave from the Texas court to file unredacted documents, the Texas court denied their motion, and no unredacted documents were ever filed in the Texas proceeding.

Importantly, Appellants' filings do not disclose the substance of any document or provide any confidential MDL information. Appellants' filings represent an attorney's high-level summary of what "discovery . . . show[ed]." A-884.

That the district court quoted Appellants' high-level summaries in full strongly suggests that the summaries did not violate the Protective Order. After all, the district court surely would not itself have disclosed "confidential MDL information" in its order, and it did not. The general references to discovery—in Mr. Keller's affidavit, in the motion, and in the district court's order—do not disclose confidential information from the MDL.

4

Indeed, Kenvue's motion for sanctions never asserts that Mr. Keller's affidavit disclosed confidential information in the Texas filing. Kenvue acknowledges that Mr. Keller "completely redacted the protected materials" in the Texas filings. A-632. To the extent Kenvue develops a theory based on the Texas matter, its sanctions motion rests on the theory that filing fully redacted copies of the documents—which did not disclose their substance in any way—nonetheless constituted impermissible "use" in violation of the Protective Order. A-631.

## II. The Protective Order Does Not Unambiguously Prohibit Filing Fully Redacted Copies of Documents Produced in the MDL.

In seeking sanctions, Kenvue invoked the MDL Protective Order's prohibition on the "use" of documents in other proceedings. *See* A-631 ("Confidential Information and/or Highly Confidential Information May Be Used Only in this Matter." (quoting Protective Order § IV, ¶ 17)).

But as the Supreme Court has explained, "the word 'use' poses some interpretational difficulties because of the different meanings attributable to it." *Bailey v. United States*, 516 U.S. 137, 143 (1995) ("Consider the paradoxical statement: 'I use a gun to protect my house, but I've never had to use it.'"). "'Use' draws meaning from its context[.]" *Id.*

The ordinary meaning of "use" is "to employ"; "[t]o make use of; to convert to one's service; to employ; to avail oneself of; to utilize; to carry out a purpose or action by means of"; or "'to employ'" or "'to derive service from.'" *Smith v. United States*, 508 U.S. 223, 229 (1993) (quoting Black's Law Dictionary 1541

(6th ed. 1990); Webster's New International Dictionary 2806 (2d ed. 1939); *Astor v. Merritt*, 111 U.S. 202, 213 (1884)).

In the broadest sense of "use," it is difficult to imagine how Appellants could avoid "using" confidential information from the MDL while serving as counsel in related matters. Mr. Keller and other lawyers at Keller Postman are aware of the contents of these documents and what discovery in the MDL has uncovered. If confidential information from the MDL shapes their litigation strategy and decisions in cases related to the MDL, Appellants would arguably have "used" the information. This is a recurring issue in trade secret litigation. *See, e.g.*, *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1271 (7th Cir. 1995) (affirming a preliminary injunction on the basis of the "inevitability that Redmond would rely on PCNA trade secrets in his new job"); *Misys Int'l Banking Sys., Inc. v. TwoFour Sys., LLC*, 800 N.Y.S.2d 350, 2004 WL 3058144, at *9 (Sup. Ct. Nov. 23, 2004) ("[I]n her new responsibilities at F–O–R, . . . she will inevitably use such information, since . . . she cannot eradicate these secrets from [her] mind." (internal quotation marks omitted) (alteration in original)). Or Appellants might "use" documents produced in the MDL to shape their discovery requests in other proceedings, issuing requests intended to require the production of specific documents that they already know to exist. Such a broad interpretation of "use" would prevent Texas from retaining counsel of its choice in the state proceedings.

The Ninth Circuit has rejected such a broad reading of "use":

[I]f taken literally, the order would be absurd. . . . Go–Video's lawyers cannot achieve total amnesia and all their subsequent work in antitrust

6

litigation against the defendants (and perhaps anyone else) would be informed by what they learned during discovery in the 1987 suit[.] . . . [L]awyers who learn from and use their experience obtained in discovery under such an order would have to change fields, and never do antitrust work again, lest they "use" what they learned in a prior case "in any way whatsoever" in any "other action." For the protective order to comply with common sense, a reasonable reading must connect its prohibitions to its purpose—protection against disclosure of commercial secrets.

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

Many courts have grappled with the issue and concluded that, in the context of protective orders, "use" requires at least some disclosure of the protected materials. *See Static Media LLC v. Leader Accessories LLC*, 38 F.4th 1042, 1048 (Fed. Cir. 2022) ("'[U]se' here implies disclosure to the public or those not signatories to the protective order."); *City of Fort Collins v. Open Int'l, LLC*, No. 21-CV-02063-CNS-MEH, 2022 WL 7582436, at *4-5 (D. Colo. Aug. 16, 2022) ("[A] party's use of its *knowledge* that documents exist does not necessarily constitute the use *of those documents*. . . . The plain meaning of the term 'use,' in the Court's view, requires something more than the mere use of one's knowledge that documents exist, and would instead require the substantive reliance on or utilization of the documents themselves to achieve a specific purpose."); *Milwaukee Elec. Tool Corp. v. Snap-on Inc.*, No. 14-CV-1296-JPS, 2016 WL 1719657, at *4 (E.D. Wis. Mar. 16, 2016) ("The plaintiffs 'used' their knowledge of the existence of these documents—and expressed that knowledge with a general description of the documents—but did not actually use any of the confidential information contained in the documents themselves."); *Principle Sols. LLC v. Feed.Ing B.V.*, No. 13-C-223, 2015 WL 113292,

at *5 (E.D. Wis. Jan. 8, 2015) ("[T]he confidentiality . . . was preserved . . . because Feed filed the information under seal, redacted it from its public filings, and filed objections to the sealing of the materials.").

As detailed above, Appellants did not quote or otherwise disclose the substance of any confidential document in the Texas proceeding. The filed documents were fully redacted, with no means for the court, the public, or even co-counsel to know their contents. A-734. Appellants could not have "derive[d] service from," *Smith*, 508 U.S. at 229, the confidential MDL documents in the Texas case because the Texas trial court could not have relied on them in reaching a decision. The Texas court never granted the motion to file unredacted copies, and unredacted copies were never filed. Whether submitting fully redacted documents and a high-level summary that does not disclose the substance of any document constitutes "use" is, at most, ambiguous. *See, e.g.*, *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 192 F. Supp. 3d 400, 405 (S.D.N.Y. 2016) (prohibition on "use" of documents covered by protective order did not prohibit "[a]cknowledging the existence of such documents" to argue for their production in a related case).

Even assuming that Rule 37 applies, sanctions require "clear and convincing evidence that counsel disregarded a clear and unambiguous scheduling or other pretrial order." *Perez v. Edwards*, No. 20-CV-1359 (LJL), 2023 WL 5935029, at *3 (S.D.N.Y. Sept. 12, 2023) (quoting *Shanchun Yu v. Diguojiaoyu, Inc.*, No. 18-CV-7303 (JMF), 2019 WL 6174204, at *3 (S.D.N.Y. Nov. 20, 2019)).

*Grace v. Center for Auto Safety*, a contempt case, illustrates the principle of interpreting ambiguities in an order. The order "unambiguously limited

8

dissemination of the deposition to parties, attorneys and office staff 'in the *Grace* defamation case,'" but the order did not clearly and unambiguously "limit dissemination of the deposition to the parties' attorneys of record." *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996). "Resolving any ambiguity in favor of those who are claimed to have been in contempt, [the Sixth Circuit] conclude[d] as a matter of law that the order must be read as permitting dissemination of the deposition to anyone who was in fact functioning as an attorney for the defendants in *Grace,* whether in an 'official' role or not." *Id.*

The district court suggested that Appellants "should have . . . raised and resolved [any ambiguity] before the Orders were issued." A-892. But that reasoning assumes that Appellants already knew that the district court interpreted the Order differently than they did. The difference in understanding became clear only *after* Appellants filed fully redacted documents in the Texas proceeding, when the district court's order imposing sanctions clarified the district court's understanding that the prohibition on "use" covered filing fully redacted documents. A-892.

Nor does Appellants' conduct in other proceedings undermine their good-faith interpretation of the Protective Order. The district court noted that Keller Postman "understood in the California and Illinois actions that it needed either to comply with the Coordination Order or to get Kenvue's consent to use its protected information" and "when Kenvue objected to the use of its confidential information in the Florida Action, Keller Postman took steps to quickly withdraw the materials from the docket." A-892. In the Florida action, however, Kenvue objected to the use of the MDL materials and demanded that Appellants take steps to ensure "that the

9

information cannot be accessed by any individuals who are not specifically authorized to review such information"; "that no unauthorized individuals are able to access" the filings, including asking the Florida court to "permanently seal[] these documents"; and that Appellants file an amended brief that "removes" use of and references to protected materials. A-727.

Thus, in the Texas action, Appellants took care to file *redacted* materials with the Court, which prevented unauthorized access to the MDL materials, and summarized only at a high level what discovery showed, thus declining to use or reference any specific materials covered by the Protective Order. That Appellants understood that the former (public) filing constituted "use" under the Protective Order does not demonstrate that they understood that the latter (redacted) filings also constituted prohibited "use."

Because the Protective Order does not unambiguously cover Appellants' conduct, the district court should not have awarded sanctions. The importance of clarity cannot be overstated. Texas needs its outside counsel to vigorously represent the State and its interests. If counsel can be sanctioned for violating ambiguous prohibitions on "use" of documents from the MDL case, counsel will be deterred from providing the zealous advocacy that their clients deserve. And in the future, when a State seeks to file a consumer protection action related to personal injury claims in a pending MDL, it may well be unable to retain counsel of its choice.

10

## III. The District Court Erred in Inferring Willfulness Based on the Florida Action.

The district court also erred in inferring that Appellants acted willfully because of their filings in Florida. As the district court noted, when notified of Kenvue's objections to the Florida filings, "Keller Postman attorneys sprung into action, filed a revised motion omitting any reference to the confidential information, and moved to withdraw its prior filing." A-884.

When Keller Postman filed in Texas, unlike their Florida filings, the filings were fully redacted and did not disclose the substance of any confidential information. The district court nevertheless inferred that Appellants "acted willfully in the Texas Action" because they filed those materials "after Kenvue confirmed on February 2 that it did not consent to the use of confidential information produced in the MDL in the Texas Action." A-884.

But the district court failed to acknowledge the differences between Appellants' Florida filings and their Texas filings. After Kenvue objected to their filings in the Florida action, Appellants took pains not to disclose confidential information in their filings in the Texas action. The proper inference from these events is not that Appellants willfully engaged in the same misconduct in both actions but that Appellants believed—rightly or wrongly—that filing fully redacted documents in the Texas action did not constitute prohibited "use" within the meaning of the Protective Order. Indeed, the differences between Appellants' filings in Florida and their filings in Texas demonstrate that the Texas filings were an attempt by Appellants to comply with the Protective Order.

11

## Conclusion

For these reasons, this Court should reverse the imposition of sanctions.

Dated:   Austin, Texas
           July 31, 2026

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

/s/ William R. Peterson
WILLIAM R. PETERSON
Solicitor General
William.Peterson@oag.texas.gov

BRENT WEBSTER
First Assistant Attorney General

*Counsel for the State of Texas as Amicus Curiae*

12

### CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and Local Rule 29.1(c) because it contains 2,901 words, excluding the parts of the brief exempted by Rule 32(f), according to the word count feature of Microsoft Word. Additionally, this brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity font.

/s/ William R. Peterson
WILLIAM R. PETERSON