# 26-1302(L),
# 26-1556(CON)

## United States Court of Appeals
*for the*
## Second Circuit

ASHLEY C. KELLER, KELLER POSTMAN LLC,

*Interested Parties-Appellants,*

– v. –

JOHNSON & JOHNSON CONSUMER INC.,
n/k/a Kenvue Brands LLC,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF FOR DEFENDANT-APPELLEE**

JESSICA L. BRENNAN
BARNES & THORNBURG LLP
67 East Park Place, Suite 1000
Morristown, New Jersey 07960
(973) 775-6101

JULIA HU
ORRICK, HERRINGTON
& SUTCLIFFE LLP
120 Broadway, 5th Floor
Santa Monica, California 90401
(310) 633-2800

NAOMI J. SCOTTEN
ORRICK, HERRINGTON
& SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
(212) 506-5116

CESAR LOPEZ-MORALES
ELISE M. BARANOUSKI
ORRICK, HERRINGTON
& SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 339-8400

*Attorneys for Defendant-Appellee*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee Johnson & Johnson Consumer, Inc. ("JJCI") was renamed Kenvue Brands LLC effective October 28, 2024. Kenvue Brands LLC (hereinafter, "Kenvue") is a wholly owned subsidiary of Kenvue Inc., a publicly held corporation. Upon information and belief, no publicly held corporation owns more than 10% of Kenvue Inc.'s common stock.

# TABLE OF CONTENTS

**Page**


CORPORATE DISCLOSURE STATEMENT .......... i

TABLE OF AUTHORITIES .......... iv

INTRODUCTION .......... 1

JURISDICTION .......... 5

STATEMENT OF THE ISSUES .......... 6

STATEMENT OF THE CASE .......... 7

Plaintiffs sue the manufacturers of acetaminophen. .......... 7

The Judicial Panel on Multidistrict Litigation consolidates the federal litigation and assigns the MDL to Judge Cote. .......... 8

The parties negotiate a Protective Order in the MDL, which the district court adopts. .......... 9

The district court issues multiple rulings in the MDL, and this Court issues a decision. .......... 11

Appellants concededly violate the Protective Order by using confidential MDL discovery in the Florida action. .......... 13

Appellants violate the Protective Order a second time, by using confidential MDL discovery in the Texas action. .......... 17

The district court imposes sanctions pursuant to Rule 37. .......... 21

SUMMARY OF THE ARGUMENT .......... 23

STANDARD OF REVIEW .......... 26

ARGUMENT .......... 27

I. The District Court Did Not Abuse Its Discretion In Finding That Appellants Violated The Protective Order. .......... 27

A. A party "uses" Confidential Information when it employs the information to bolster its legal position. .......... 27

B. The district court did not err, let alone clearly err, in finding that Appellants "used" Confidential Information. .......... 31

II. Rule 37(b) Authorized The Sanctions In This Case....................... 36

A. The Protective Order is an "order to provide or permit discovery."................................................................................. 36

1. The text of Rule 37(b)(2) encompasses the Protective Order........................................................... 37

2. The structure of the Rules confirms that Rule 37(b)(2) encompasses the Protective Order. ............... 42

3. The history of Rule 37(b)(2) further confirms its breadth. ....................................................................... 44

B. The district court had the authority to enter sanctions as the court where the MDL was "pending." ....................... 47

C. The district court did not abuse its discretion in sanctioning both Appellants under Rule 37(b)(2)(C)........... 49

1. The district court did not abuse its discretion by including Mr. Keller in the sanctions order. .............. 49

2. The district court did not abuse its discretion by including Keller Postman in the sanctions order....... 53

D. The district court's "willfulness" finding provides no ground for overturning its sanctions order.......................... 55

1. Willfulness is not an element of a Rule 37(b)(2)(C) sanctions award. ........................................................ 55

2. The district court did not err, let alone clearly err, in finding willfulness. ............................................... 57

III. Appellants' Reassignment Request Is Beyond This Court's Authority And Substantively Meritless. ....................................... 62

A. This Court lacks authority to reassign an MDL.................. 63

B. There is no factual basis for reassigning the MDL. ............ 65

CONCLUSION ......................................................................................... 72

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Agiwal v. Mid Island Mortg. Corp.*,
555 F.3d 298 (2d Cir. 2009) .......... 57

*Baba v. Japan Travel Bureau Int'l, Inc.*,
165 F.R.D. 398 (S.D.N.Y. 1996) .......... 57

*BankAtlantic v. Blythe Eastman Paine Webber, Inc.*,
12 F.3d 1045 (11th Cir. 1994) .......... 53

*Bartlett v. Société Générale de Banque au Liban SAL*, No. 19-CV-00007, 2024 WL 5168734 (E.D.N.Y. Dec. 19, 2024) .......... 28, 52

*Berk v. Choy*,
607 U.S. 187 (2026) .......... 37

*Matter of Bouchard Transp. Co.*,
No. 14-cv-0617, 2018 WL 1581992 (S.D.N.Y. Mar. 28, 2018) .......... 39

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
602 F.2d 1062 (2d Cir. 1979) .......... 61, 72

*Contant v. AMA Capital, LLC*,
66 F.4th 59 (2d Cir. 2023) .......... 28

*Cullen v. United States*,
194 F.3d 401 (2d Cir. 1999) .......... 71

*Daval Steel Prods. v. M/V Fakredine*,
951 F.2d 1357 (2d Cir. 1991) .......... 41, 43, 46

*Devaney v. Cont'l Am. Ins. Co.*,
989 F.2d 1154 (11th Cir. 1993) .......... 51

*Disability Advocs., Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*,
675 F.3d 149 (2d Cir. 2012) .......... 6

*Doe v. Trump Corp.*,
6 F.4th 400 (2d Cir. 2021) .......... 47, 51

*Dunn v. United States*,
442 U.S. 100 (1979) .......... 45

*E.E.O.C. v. Loc. 638*,
81 F.3d 1162 (2d Cir. 1996) .......... 26

*United States ex rel. Eisenstein v. City of New York*,
540 F.3d 94 (2d Cir. 2008) .......... 47

*Enmon v. Prospect Cap. Corp.*,
675 F.3d 138 (2d Cir. 2012) .......... 53, 54

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021) .......... 65

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*,
No. 15-CV-2044, 2017 WL 2418742 (S.D.N.Y. June 5, 2017) .......... 29

*Evans v. Griffin*,
932 F.3d 1043 (7th Cir. 2019) .......... 41

*Evans v. State of Conn.*,
967 F. Supp. 673 (D. Conn. 1997) .......... 48

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
702 F.2d 770 (9th Cir. 1983) .......... 39

*FedEx Ground Package Sys., Inc. v. JPML*,
662 F.3d 887 (7th Cir. 2011) .......... 64

*Fierro Cordero v. Stemilt AG Servs., LLC*,
142 F.4th 1201 (9th Cir. 2025) .......... 30

*Flaks v. Koegel*,
504 F.2d 702 (2d Cir. 1974) .................................................................. 61

*Funk v. Belneftekhim*,
861 F.3d 354 (2d Cir. 2017) .......................................................... 27, 31

*Gelboim v. Bank of Am. Corp.*,
574 U.S. 405 (2015) ................................................................................ 49

*Gonzalez v. Hasty*,
802 F.3d 212 (2d Cir. 2015) .................................................................. 66

*Greviskes v. Univs. Rsch. Ass'n*,
417 F.3d 752 (7th Cir. 2005) ......................................................... 39, 42

*Heinrichs v. Marshall & Stevens Inc.*,
921 F.2d 418 (2d Cir. 1990) .................................................................. 48

*Hunt v. Enzo Biochem, Inc.*,
No. 06-cv-170, 2011 WL 4840713 (S.D.N.Y. Oct. 12, 2011) ............... 44

*Hyde & Drath v. Baker*,
24 F.3d 1162 (9th Cir. 1994) ................................................................. 51

*In re IKO Roofing Shingle Prods. Liab. Litig.*,
757 F.3d 599 (7th Cir. 2014) ................................................................. 63

*Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*,
38 F.3d 1279 (2d Cir. 1994) .................................................................. 61

*J.C. v. Zimmerman*,
150 F.4th 136 (2d Cir. 2025) .................................. 26, 43, 51, 57, 59, 61

*J.M. Cleminshaw Co. v. City of Norwich*,
93 F.R.D. 338 (D. Conn. 1981) ............................................................. 55

*Jay v. Spectrum Brands Holdings, Inc.*,
No. 13-cv-8137, 2015 WL 6437581 (S.D.N.Y. Oct. 20, 2015) ............. 40

*Kehm v. Procter & Gamble Mfg. Co.*,
724 F.2d 630 (8th Cir. 1984) ................................................................. 39

*Ketcham v. City of Mount Vernon*,
992 F.3d 144 (2d Cir. 2021) .......... 65, 68

*In re Kwok*,
No. 24-1271, 2025 WL 783645 (2d Cir. Mar. 12, 2025) .......... 56

*Kyros L. P.C. v. World Wrestling Ent., Inc.*,
78 F.4th 532 (2d Cir. 2023) .......... 53, 56

*Ligon v. City of New York*,
736 F.3d 118 (2d Cir. 2013) .......... 71

*Lipscher v. LRP Publi'ns, Inc.*,
266 F.3d 1305 (11th Cir. 2001) .......... 41

*LoSacco v. City of Middletown*,
71 F.3d 88 (2d Cir. 1995) .......... 70

*Loughrin v. United States*,
573 U.S. 351 (2014) .......... 40

*Martindell v. Int'l Tel. & Tel. Corp.*,
594 F.2d 291 (2d Cir. 1979) .......... 5

*Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*,
212 F.R.D. 178 (S.D.N.Y. 2003) .......... 60

*Nasser v. Isthmian Lines*,
331 F.2d 124 (2d Cir. 1964) .......... 42

*Novak v. Wolpoff & Abramson LLP*,
536 F.3d 175 (2d Cir. 2008) .......... 56

*NPF Franchising, LLC v. SY Dawgs, LLC*,
37 F.4th 369 (6th Cir. 2022) .......... 54

*On Command Video Corp. v. LodgeNet Ent. Corp.*,
976 F. Supp. 917 (N.D. Cal. 1997) .......... 29

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
460 F.3d 1217 (9th Cir. 2006) .......... 43

*Poliquin v. Garden Way, Inc.*,
154 F.R.D. 29 (D. Me. 1994) .......... 52

*Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*,
92 F.4th 415 (2d Cir. 2024) .......... 66

*Rutledge v. Walgreen Co.*,
182 F.4th 168 (2d Cir. 2026) .......... 7, 8, 13, 67, 68, 69

*S.E.C. v. TheStreet.Com*,
273 F.3d 222 (2d Cir. 2001) .......... 37

*In re Sanctions for Failure to Comply with a Court Order*,
58 B.R. 560 (D. Conn. 1985) .......... 59

*Schiller v. City of New York*,
No. 04-cv-7921, 2007 WL 1623108 (S.D.N.Y. June 5, 2007) .......... 39

*Schoenberg v. Shapolsky Publishers, Inc.*,
971 F.2d 926, 936 (2d Cir. 1992) .......... 61

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984) .......... 37

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
490 F.3d 130 (2d Cir. 2007) .......... 71

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*,
685 F.3d 486 (5th Cir. 2012) .......... 38, 41, 44, 52, 53

*Spiegel v. Schulmann*,
604 F.3d 72 (2d Cir. 2010) .......... 68

*Stanley v. City of Sanford*,
606 U.S. 46 (2025) .......... 41

*Static Media LLC v. Leader Accessories LLC*,
38 F.4th 1042 (Fed. Cir. 2022) .......... 30

*In re Stoltz*,
315 F.3d 80 (2d Cir. 2002) .......... 64

*Stuart I. Levin & Assocs., P.A. v. Rogers*,
156 F.3d 1135 (11th Cir. 1998) .................................................... 50

*Tamari v. Bache & Co. (Lebanon) S.A.L.*,
729 F.2d 469 (7th Cir. 1984) ...................................................... 53

*Teri v. Oxford Mgmt. Servs., Inc.*,
No. 05-cv-2777, 2008 WL 11435689 (E.D.N.Y. Sep. 30,
2008) ...................................................................................... 58

*In re Terrorist Attacks on Sep. 11, 2001*,
152 F.4th 396 (2d Cir. 2025) ...................................................... 40

*In re Terrorist Attacks on Sept. 11, 2001*,
No. 03-MDL-1570, 2023 WL 4561766 (S.D.N.Y. July 17,
2023) ...................................................................................... 60

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
900 F.2d 522 (2d Cir. 1990) ...................................................... 53

*In re Tronox Inc.*,
855 F.3d 84 (2d Cir. 2017) .......................................................... 5

*Uber Techs., Inc. v. JPML*,
131 F.4th 661 (9th Cir. 2025) .................................................... 64

*United States v. Jacobs*,
955 F.2d 7 (2d Cir. 1992) .......................................................... 65

*United States v. Londono*,
100 F.3d 236 (2d Cir. 1996) ...................................................... 71

*Waetzig v. Halliburton Energy Servs., Inc.*,
604 U.S. 305 (2025) .................................................................. 47

*Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*,
992 F.2d 932 (9th Cir. 1993) ................................................ 39, 45

**Statutes**

28 U.S.C. § 144 ........................................................................ 63

28 U.S.C. § 455 ........ 63

28 U.S.C. § 1291 ........ 6

28 U.S.C. § 1407(a) ........ 8

28 U.S.C. § 1407(b) ........ 8, 63, 64, 65

28 U.S.C. § 1407(d) ........ 8

28 U.S.C. § 1927 ........ 53, 54

28 U.S.C. § 2106 ........ 63

**Rules**

Fed. R. Civ. P. 1 ........ 42

Fed. R. Civ. P. 26 ........ 42, 46

Fed. R. Civ. P. 26(c) ........ 42, 45, 46

Fed. R. Civ. P. 26(c)(1) ........ 38, 41, 46

Fed. R. Civ. P. 26(c)(2) ........ 46

Fed. R. Civ. P. 26(f) ........ 43

Fed. R. Civ. P. 37 ........ *passim*

Fed. R. Civ. P. 37(a) ........ 40, 41, 43, 46

Fed. R. Civ. P. 37(a)(1) ........ 40, 43

Fed. R. Civ. P. 37(a)(3) ........ 40

Fed. R. Civ. P. 37(b) ........ *passim*

Fed. R. Civ. P. 37(b)(1) ........ 43, 48

Fed. R. Civ. P. 37(b)(2) ........ *passim*

Fed. R. Civ. P. 37(b)(2) (1964) ........ 44

Fed. R. Civ. P. 37(b)(2) (1970) .................... 45

Fed. R. Civ. P. 37(c) .................... 43

Fed. R. Civ. P. 37(d) .................... 43

Fed. R. Civ. P. 37(e) .................... 43

Fed. R. Civ. P. 37(f) .................... 43

Fed. R. Civ. P. 82 .................... 6

Fed. R. Evid. 702 .................... 12, 13, 67, 68, 69

**Other Authorities**

Advisory Committee's Explanatory Statement Concerning 1970 Amendments to Discovery Rules .................... 42

Fed. R. Civ. P. 37 advisory committee's notes to the 1970 amendments .................... 45, 48, 56

Gensler, 1 Fed. R. Civ. P., Rules and Commentary § 37:21 n.2 .................... 42

Hon. Denise L. Cote, Individual Practices in Civil Cases (Dec. 19, 2024), Rule 2.C .................... 70

Robert Klonoff, *The Judicial Panel on Multidistrict Litigation: The Virtues of Unfettered Discretion*, 89 UMKC L. Rev. 1003 (2021) .................... 63

Order, *Rutledge v. Walgreen Co.*, No. 24-916(L) (2d Cir. Oct. 16, 2026) .................... 13

*Permit*, Black's Law Dictionary (12th ed. 2024) .................... 37

*Permit*, Webster's Collegiate Dictionary (12th ed. 2026) .................... 37

Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2043 (3d ed.) .................... 38

Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2289 (3d ed.) .................... 38

## INTRODUCTION

Ashley Keller and his law firm, Keller Postman (collectively, "Appellants"), were bound by a protective order in a federal MDL involving Kenvue and other manufacturers of acetaminophen. The order prohibited "use" of confidential MDL information in certain circumstances. Appellants concede they violated that order in Florida. As they must: They filed a legal brief that cited, quoted, described, and attached confidential information from the MDL. Only after Kenvue objected did Appellants move to strike the brief and refile a version that relied solely on publicly available information.

The very next day, Appellants repeated this same misconduct in Texas. They signed and filed a declaration that relied on the same confidential information in violation of the same order to make the same argument. Appellants redacted the confidential documents and the granular descriptions of those documents. But they left unredacted characterizations of what those documents would purportedly prove. And Appellants asked the Texas court to allow them to file unredacted copies under seal "notwithstanding" the protective order. By claiming support from confidential information, Appellants again *used* the

confidential information to support their legal arguments. At that point, the district court was well within its discretion to order Appellants to pay Kenvue's reasonable expenses, which the parties stipulated would take the form of a $50,000 March of Dimes donation.

Appellants now argue that the Honorable Denise Cote "mangle[d]" Rule 37, made "a hash of the Rule's plain text," and displayed "embarrassing confusion" in awarding sanctions. OB6, OB64. Indeed, according to Appellants, every element of the district court's order was wrong. But Appellants' litany of legally erroneous and factually baseless excuses for their flagrant violation of the protective order illustrates exactly why the district court was well within its discretion to award sanctions.

*First*, Appellants argue they did not violate the protective order in Texas. They claim they did not "use" any confidential information because they did not *disclose* the substance of the material in their filing. But this argument would rewrite the protective order, which prohibits the use of materials designated confidential—not just their disclosure. And it is hard to imagine a clearer example of using information than relying on that information in a legal filing to support

a legal argument. Unsurprisingly, courts in this Circuit and across the country impose sanctions for similar conduct.

*Second*, Appellants claim the district court improperly "latched onto" Rule 37(b)(2), which they assert does not authorize sanctions for violations of protective orders. OB44. But again, courts have overwhelmingly applied Rule 37(b)(2) in similar circumstances because the Rule's text, structure, and history make clear that protective orders like this one are included.

*Third*, Appellants briefly suggest the district court erred in sanctioning them because it was not the "court where the action is pending" under Rule 37(b)(2). OB46. But Appellants waived this argument by failing to raise it below. This argument is also foreclosed by Circuit precedent, and particularly meritless given the ongoing nature of the MDL.

*Fourth*, Appellants contend neither Keller Postman nor Mr. Keller can be sanctioned—even if someone else theoretically could. But Mr. Keller is hardly an innocent bystander. He signed a document using confidential information just one day after withdrawing a filing based on the same core discovery dispute. And the sanctions against Keller

Postman easily fit within this Court's precedents affirming Rule 37(b)(2) sanctions against law firms.

*Fifth*, Appellants argue their violations were not "willful" because they interpreted the parties' protective order to authorize their conduct. But willfulness is not a requirement for Rule 37(b)(2)(C) sanctions. And even if it were, the district court did not abuse its discretion in finding willfulness—particularly given Appellants' choice not to cure the Texas violations as they did in Florida the day before.

*Finally*, Appellants take the remarkable step of seeking to leverage their sanctionable conduct into reassignment of this litigation to a new MDL judge. But this Court lacks the authority to order that reassignment, given the exclusive authority afforded to the Judicial Panel on Multidistrict Litigation. Moreover, Appellants frame Judge Cote's ruling as an effort to "avoid" the applicable law and "indulge" Kenvue. OB6, OB59. But this baseless attack on the district court amounts to an assertion that Judge Cote appears biased because she ignored arguments Appellants never presented, and rejected positions which courts in this Circuit and across the country have repeatedly declined to adopt. In reality, Judge Cote's balanced, careful orders

demonstrate an even-handed approach to superintending a complex, multidistrict case. Thus, even putting aside the astonishing waste of judicial resources such reassignment would entail, Appellants' arguments provide no basis whatsoever for upending an entire MDL.

Protective orders serve a "vital function": They "secure the just, speedy, and inexpensive determination of civil disputes, … by encouraging full disclosure of all evidence that might conceivably be relevant." *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 295 (2d Cir. 1979). "This objective represents the cornerstone of our administration of civil justice." *Id.* The district court did not abuse its discretion in enforcing the protective order in this case, and this Court should affirm the sanctions order and decline to reassign the MDL.

## JURISDICTION

The district court "had jurisdiction to interpret and enforce its own prior order," "which it explicitly retained jurisdiction to enforce." *In re Tronox Inc.*, 855 F.3d 84, 112 (2d Cir. 2017); *see also* A-605 (parties to protective order consenting to district court's continuing jurisdiction).

To the extent Appellants suggest the district court lacked jurisdiction to impose sanctions under Rule 37(b) because no "action"

was "pending" before Judge Cote at the relevant time, OB9-10, that argument is wrong on the merits, *infra* § II.B. And this is not a jurisdictional argument in any event; Rule 37(b)(2) does not affect subject-matter jurisdiction. *See Disability Advocs., Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160 (2d Cir. 2012) ("The Federal Rules of Civil Procedure 'do not extend or limit the jurisdiction of the district courts.'" (quoting FRCP 82)).

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 to review the district court's post-judgment order imposing sanctions.

## STATEMENT OF THE ISSUES

1. Whether Appellants "use[d]" confidential information when they relied on the information to support their legal arguments.
2. Whether a protective order is an "order to provide or permit discovery" under Rule 37(b)(2) when the order makes it possible for discovery to occur.
3. Whether the court that issued a protective order may enforce it under Rule 37(b)(2) when the court continues to preside over an ongoing MDL.

4. Whether the district court acted within its discretion in awarding sanctions against a named partner and his law firm, where the partner was counsel of record and signed filings violating the protective order.
5. Whether a district court can award Rule 37(b)(2)(C) fees without any finding of willfulness, where such fees "must" be awarded unless a violation "was substantially justified or other circumstances make an award of expenses unjust"; and, if willfulness was required, whether the district court committed clear error in making that finding.
6. Whether this Court should reassign the MDL to a different judge, despite a statute giving exclusive authority over assignment to the Judicial Panel on Multidistrict Litigation, and notwithstanding Judge Cote's thorough, well-reasoned opinions.

## STATEMENT OF THE CASE[1]

***Plaintiffs sue the manufacturers of acetaminophen.***

Acetaminophen has long been recognized as safe and effective. *See Rutledge v. Walgreen Co.*, 182 F.4th 168, 176, 179-80 (2d Cir. 2026).

[1] Unless otherwise noted, all emphasis in this brief is added, and citations are modified to omit internal quotation marks and capitalization.

Further, it "is one of the few drugs indicated for use by pregnant women for pain and fever which, if left untreated, can harm both the woman and fetus." *Id.* at 176. Scientists at the FDA and at multiple well-regarded organizations have studied the science for decades, and have not found any "causal relationship between prenatal acetaminophen use and neurodevelopmental disorders." *Id.* Nonetheless, plaintiffs have filed hundreds of federal lawsuits alleging that prenatal use of acetaminophen causes autism spectrum disorder and ADHD.

***The Judicial Panel on Multidistrict Litigation consolidates the federal litigation and assigns the MDL to Judge Cote.***

The Judicial Panel on Multidistrict Litigation (JPML) consists of seven federal judges appointed by the Chief Justice of the United States. *See* 28 U.S.C. § 1407(d). The JPML decides whether to transfer related federal cases to a single judge for coordinated pretrial proceedings. *Id.* § 1407(a). If so, the JPML also selects the district and the presiding judge. *Id.* § 1407(b).

In October 2022, the JPML centralized the federal cases regarding acetaminophen and assigned the resulting MDL to Judge Cote. *See* ECF 1. The JPML explained that "[t]his complex industrywide litigation" required an "experienced" judge, and "Judge Cote is thoroughly familiar

with the nuances of complex, multidistrict litigation by virtue of having presided over eight MDLs which have involved a broad range of complex issues, including pharmaceutical products liability and industrywide dockets." *Id.* at 4. The JPML expressed confidence that Judge Cote would "efficiently manage this litigation," "including confidentiality and [defendant] specific discovery, in a manner that guarantees the just and efficient resolution of all cases." *Id.* at 3-4.

***The parties negotiate a Protective Order in the MDL, which the district court adopts.***

From the start of the MDL in 2022, Ashley Keller has been one of three designated co-leads for plaintiffs in the MDL ("Plaintiffs"). *See* ECF 52, 180. Mr. Keller and his firm, Keller Postman, have represented numerous Plaintiffs individually. *See* A-739. As a co-lead counsel, Mr. Keller is responsible for, among other things, "acting for all Plaintiffs … in presenting … suggestions to the Court," "working with opposing counsel in developing and implementing a litigation plan," and "initiating and organizing discovery." ECF 62 at 1-2.

With Mr. Keller playing a key leadership role, counsel for the parties submitted a joint proposed protective order to the district court. ECF 344 & 344-2. By and large, the district court adopted the proposal

and entered a protective order in January 2023 (the "Protective Order"). A-576-605. This order "is binding upon the parties, … including their respective attorneys" and "any person who obtains any documents or other Confidential Information or Highly Confidential Information produced or disclosed" in the MDL (hereinafter, for simplicity, "Confidential Information"). A-576-577(¶1).

The Protective Order states, "Confidential Information … may be used only in this matter." A-591(¶17). Such information "*shall not be used* in any other proceeding or action," unless produced in a Related Action under the forthcoming discovery Coordination Order. *Id*. The Protective Order memorialized the parties' "express[] underst[anding] … that in producing Confidential Information … in th[e] [MDL], the parties shall be relying upon the terms and conditions of this Order." A-603(¶33).

The Protective Order bound the parties and their counsel upon adoption, and provided that anyone else who accesses Confidential Information first has to sign an Acknowledgement and Agreement to Be Bound. A-605; A-593-594(¶21); A-604(¶36). Such persons "agree not to disclose … and agree not to use such information except as permitted by

th[e] [Protective] Order," and they "acknowledge that failure to comply with each of the provisions of the Order could expose [them] to sanctions and punishment in the nature of contempt of court or any other penalties authorized by law or statute." A-605. They "consent to … the jurisdiction" of the district court "for the enforcement of the Order," *id.*, which "shall survive and remain in effect after the termination of this proceeding or other related proceedings," A-604(¶34).

The subsequent Coordination Order established procedures for coordinating discovery and using MDL discovery in similar state-court actions. A-606-614. The Coordination Order provided a ready-made path to use the MDL discovery in a state-court action by asking the state court to adopt the Coordination Order and certain other orders from the MDL—including the Protective Order. A-607-608.

***The district court issues multiple rulings in the MDL, and this Court issues a decision.***

Initially, Kenvue sought to dismiss Plaintiffs' claims on multiple grounds. It argued, among other things, that federal law preempted Plaintiffs' claims, and that Plaintiffs failed to plausibly allege causation or knowledge. *See* ECF 426 at 17-39. The district court rejected

Kenvue's preemption argument, *see* ECF 589, and found Rule 8 satisfied, *see* ECF 602.

In 2023, Kenvue and other defendants in the MDL ("Defendants") moved under the recently amended Federal Rule of Evidence 702 to exclude the testimony of Plaintiffs' five proposed general causation experts. *See* ECF 1160, 1165. The district court granted Defendants' motions to exclude, finding that Plaintiffs' experts "failed to show that their methodology … is generally accepted by the scientific community." ECF 1381 at 48. Plaintiffs consequently lacked any "admissible evidence to demonstrate that prenatal exposure to acetaminophen causes either ASD or ADHD in offspring," *id.* at 5, and the court entered summary judgment for Defendants as to all individual cases then pending in the MDL, *see* ECF 1409.

Plaintiffs appealed the judgment. While their appeal was pending, new individual cases continued to be filed and added to the MDL, and final judgment was separately entered in tranches of those cases on at least ten different occasions, including as recently as April 2026. *See* ECF 1644.

In July 2026, the Second Circuit issued its decision. *See Rutledge*, 182 F.4th at 168. The Court vacated the district court's Rule 702 order as to certain experts, affirmed as to other experts, and affirmed the district court's ruling rejecting Defendants' preemption argument. *See id.* at 184-201. Defendants filed a petition for rehearing and/or rehearing *en banc*, which was denied in October 2026. *See* Order, *Rutledge v. Walgreen Co.*, No. 24-916(L) (2d Cir. Oct. 16, 2026).

***Appellants concededly violate the Protective Order by using confidential MDL discovery in the Florida action.***

Keller Postman attorneys have filed similar suits in state courts. As part of that litigation, the parties have had a practice of resolving the permissible use of Confidential Information on a case-by-case basis. *See* OB16. In Illinois, for example, defense counsel agreed to a case management order allowing the use of discovery that had been produced in the MDL. A-789 n.2; A-746. The parties also expressly agreed there to a protective order modeled after the MDL Protective Order. *Id.*; A-726 n.1. Both the case management order and the protective order were entered on the Illinois docket *before* Appellants filed an opposition to a motion to dismiss using Confidential Information. *Compare* A-746 (case management order entered

December 2024; protective order entered March 2025), *with* OB21-22 (brief filed in July 2025).[2]

In December 2025, Melissa Guist, represented by Appellants, filed a suit in Florida state court, alleging similar claims against Kenvue and other manufacturers. A-640-712. Kenvue moved to dismiss for lack of personal jurisdiction, which Appellants opposed in January 2026. A-1010-1033. This time, Appellants did *not* seek Kenvue's permission to use any Confidential Information prior to opposing Kenvue's motion. *See* A-726-727; A-740-741; A-747. Nor was there any protective order in place in Florida at that time. *See* A-764; A-789 n.2.

In that opposition, which was signed by Mr. Keller and accompanied by his declaration, Appellants cited, quoted, described, and ultimately attached multiple documents that qualified as Confidential Information under the Protective Order. *See* OB63-64; A-1016 (opposition quoting APAP-JJCI-0000015607); A-1038 (Keller Decl. ¶14, quoting from APAP-JJCI-0000015607 and noting that it was

---

[2] As Kenvue explained in the district court, it entered into case-specific stipulations in California and Illinois only after Keller Postman opposed adopting the district court's Coordination Order in those actions. *See* A-789 n.2.

attached as Exhibit 6); A-1043 (Keller Decl. ¶31, describing APAP-JJCI-0000016835, and noting that it was attached as Exhibit 20); A-1039 (Keller Decl. ¶17, describing APAP-JJCI-0000034407 and APAP-JJCI-0000035030, and noting that these were attached as Exhibits 9 and 10).

There is no dispute that this was Confidential Information. Mr. Keller signed and filed a "Notice of Confidential Information" specifically acknowledging that: his client's opposition brief "quote[d] purportedly confidential information" on several pages; his own declaration "quote[d] purportedly confidential information" in numerous paragraphs; and multiple attached exhibits constituted Confidential Information. A-722-724. The notice listed all four documents discussed above as confidential. *See* A-723-724(¶¶5,7,8,13). Mr. Keller's declaration highlighted that he "serve[s] as co-lead counsel for plaintiffs in the federal multidistrict litigation" and, "[i]n this capacity, [he] ha[s] gained personal knowledge of the matters" attested to in his declaration. A-1036(¶4). The Florida court notified Mr. Keller that he needed to file a "Motion to Determine Confidentiality of Court Records" within ten days to keep the Confidential Information from becoming publicly accessible on the court's docket. A-758.

Kenvue's counsel promptly informed Appellants that the Florida filings had "improperly disclose[d] confidential documents in contravention of existing protective orders," and that Kenvue objected to the "use or filing of these materials" in contravention of the Protective Order. A-726. Kenvue demanded Appellants fulfill their obligations under the Protective Order "to take all reasonable and necessary steps to assure the security" of the Confidential Information, "includ[ing] … obtaining" a permanent sealing order from the Florida court—never suggesting that such sealing was sufficient to cure the violation. A-727. Rather, Kenvue demanded "an amended opposition brief that removes all *use* of, and *references* to" the Confidential Information. *Id.* Kenvue gave notice that its demand was "without prejudice to the Defendants' intent to seek expedited relief from the MDL[] … court[]—including fees, costs, and other sanctions"—for the "blatant violation" of the Protective Order. *Id.*

Counsel met and conferred. *See* A-750-751. On February 4, 2026, Appellants filed an amended opposition and declaration—which they assert did not "contain, describe, quote, or attach any of Kenvue's confidential information"—and moved to strike the original filings. A-

752(¶46); A-763. Mr. Keller personally "approved that corrective action." A-741(¶12). The Florida court granted the motion to strike. *See* A-760-761.

***Appellants violate the Protective Order a second time, by using confidential MDL discovery in the Texas action.***

In October 2025, the State of Texas, also represented by Appellants, sued Kenvue and other manufacturers in Texas state court. *See* A-765-766(¶¶4,10). Kenvue moved to dismiss for failure to state a claim and lack of personal jurisdiction. *See* A-1063. Appellants prepared an opposition relying on the same four confidential documents they had just improperly used in the Florida opposition. *See* A-747(¶21); A-750(¶35); A-767(¶13); OB20 (acknowledging that "the four MDL documents" were "appended as exhibits" in Texas).

On February 2, 2026—three days after Kenvue's letter flagging Appellants' Florida misconduct—Keller Postman attorney John Masslon, who was supervised by Mr. Keller, A-766(¶9), asked Kenvue whether it would "consent to the use of documents that have been produced in [the MDL] in the [Texas action] subject to the documents (*and references thereto*) being filed under seal until there is a protective order entered in the [Texas action]," A-773. Kenvue responded that it

"oppose[d] any attempt to use discovery designated as confidential in the MDL proceeding," because Appellants had just "violated the Protective Order in connection with the [Florida action]." *Id.*

Despite Kenvue's unequivocal "no," Appellants used Kenvue's Confidential Information in their opposition to Kenvue's motion to dismiss. Rather than reworking their opposition to avoid any use of the Confidential Information—as they had just sought to do in Florida—Appellants used the same four confidential documents in the Texas opposition. *See* A-767-768(¶¶17,19). The factual assertions in the opposition were unredacted, but Appellants blacked out the citations to the paragraphs of Mr. Keller's affidavit describing the more specific content of the confidential documents. *See* A-1093-1094.

In that accompanying affidavit, Mr. Keller attested that he had "personal knowledge" of relevant matters "as co-lead counsel for plaintiffs" in the MDL. A-1667(¶4). He asserted that "[d]iscovery in similar cases shows Johnson & Johnson directly participated in the failure to warn about risks associated with Tylenol," and specifically referenced "[d]ocuments … produced by Kenvue Brands LLC in the federal multidistrict litigation." A-1669(¶11). A series of redactions

followed, some of which related to Confidential Information in this case. *See* A-1669-1675(¶¶12-15, 17, 23-24, 29-31); A-767(¶17). Mr. Keller's affidavit attached redacted copies of the Confidential Information as exhibits, leaving the Texas court to speculate as to their contents. *See* A-1111-1126, A-1133-1140, A-1149-1163, A-1182-1597, A-1604-1607, A-1622-1628 (fully redacting exhibits whose cover pages were marked "CONFIDENTIAL"); A-768(¶17). Some of the redactions were relevant to the issues here. *See* SPA-7 (identifying 11 pages of documents in Florida action, which used the same Confidential Information).

Although the public copies were redacted, Appellants simultaneously filed a motion for leave "to file unredacted copies of [the] opposition, affidavit in support thereof, and certain exhibits under seal *notwithstanding any protective order* that *Defendants* are a party to." A-777. The motion omitted that the Keller Postman lawyers filing the motion—along with their MDL clients—were subject to the same Protective Order. A-778. Appellants asked the Texas court to consider the *unredacted* Confidential Information, asserting that "voluminous discovery in the multi-district litigation" will "show[] that Defendants are subject to personal jurisdiction in Texas" and "that the State has

pleaded sufficient facts to survive a motion to dismiss." A-775; *see also* A-775-778. The next day, counsel for Kenvue requested copies of the unredacted versions of the documents, and Keller Postman provided them, noting that the copies had not been "filed or submitted to the court." A-772.

At a later hearing on the motion to dismiss, Keller Postman attorneys insisted "the opposition has to be read as a whole"—"includ[ing] the … redacted portion of both the affidavit, the exhibits thereto, and the citations which are in the combined opposition." A-804. They continued to press for leave to file unredacted versions of the confidential MDL discovery under seal, asserting that "the documents [they] would like to file under seal would be helpful to the Court when resolving" Defendants' "motion to dismiss." A-804. And the Keller Postman attorneys explained that the redacted statements in the affidavit "backed up" their substantive allegations. A-807. The Texas court understood this and credited counsel's representations about the redactions: "I believe that I will take all of your factual allegations as true. And I will consider them – *because you said they're all backed up by this evidence*." A-807-808.

In May 2026, the parties stipulated to the use of MDL discovery in the Texas action. A-903-907. The stipulation specified that such use must be "consistent with the terms of any applicable Protective Order entered in the MDL." A-905.

***The district court imposes sanctions pursuant to Rule 37.***

Within days of the second Protective Order violation (and months before the stipulation in Texas), Kenvue moved for sanctions against both Mr. Keller and Keller Postman. A-625. Kenvue sought attorney's fees against Mr. Keller under Rule 37, and a formal reprimand against both Appellants, pursuant to the court's inherent authority. A-624-625, A-630, A-634. The district court ordered Appellants to respond. A-738.

The district court granted the motion, finding Appellants impermissibly "us[ed] confidential information disclosed in the MDL in the Florida and Texas Actions." SPA-12. In Florida, Appellants "violated the Protective Order by describing, quoting, and attaching four confidential documents to" their opposition. *Id.* And in Texas, Appellants "violated the Protective Order" again by "filing documents ... that relied upon or described confidential information produced in the MDL, including in the redacted opposition brief to

Kenvue's motion to dismiss, Mr. Keller's affidavit, and the motion to seal." *Id.* The court explained that Appellants engaged in this conduct "even after being notified in writing that Kenvue did not consent to the use of confidential MDL information in the Texas Action." *Id.* And it rejected Mr. Keller's attempts "to minimize his responsibility for what occurred." SPA-19. The court thus "impose[d] sanctions" against Appellants "under Rule 37," SPA-26, "declin[ing] to reach the request to impose sanctions under its inherent authority," SPA-12. It found an award of attorneys' fees "mandatory" under the circumstances. SPA-20. And the court stated that "the issuance of this Opinion and Order sufficiently address[ed]" Kenvue's request for "an admonition," *id.*, and further ordered Mr. Keller to ensure every Keller Postman attorney working on related cases read the sanctions order, SPA-26-27.

Kenvue proposed to Appellants "that, in lieu of paying attorneys' fees incurred in connection with the motion for sanctions," Appellants "donate $50,000 to March of Dimes"—a nonprofit organization dedicated to improving the health of mothers and babies. A-908. Appellants agreed, *see id.*, and the district court so ordered, *see* SPA-28. This appeal followed.

## SUMMARY OF THE ARGUMENT

**I.A.** The district court correctly interpreted the Protective Order to prohibit Appellants' conduct. The Protective Order provides that Confidential Information produced in the MDL "shall not be *used* in any other proceeding or action" unless certain conditions are satisfied. A-591. A party "uses" Confidential Information when it "employ[s] [it] … for the accomplishment of a purpose," OB31, such as to advance a legal argument. Appellants resist that straightforward conclusion, insisting that Confidential Information is "used" only when it is *disclosed*. But the Protective Order separately prohibits use and disclosure. As many courts have recognized, a prohibited use of confidential information can occur without disclosure.

**I.B.** The district court did not clearly err in finding that Appellants twice "used" Confidential Information in violation of the Protective Order. Appellants concede they did so in Florida—they impermissibly relied on four confidential documents to make a legal argument. The day after withdrawing that filing, Appellants used the same Confidential Information in Texas. They blacked out the citations and the documents themselves, but left intact characterizations of what

the documents would purportedly show. And Appellants moved to file *unredacted* copies under seal—"notwithstanding any protective order." A-777. Appellants argue that there was no "use" because briefs in other actions demonstrate there was no disclosure of Confidential Information. Again, however, a "use" is broader than a "disclosure." Further, Appellants did not present those other briefs to the district court, so the district court could not have clearly erred in finding that Appellants violated the Protective Order without considering them.

**II.A.** The Protective Order that Appellants twice violated was an "order to provide or permit discovery." FRCP 37(b)(2)(A). The text, structure, and history of the Rules all compel that conclusion. An order "permits" discovery if it "makes it possible" or "allows" it. That is what the Protective Order does: It sets conditions to facilitate the full disclosure of confidential evidence. Appellants' narrow construction of Rule 37(b)(2)—that it governs only orders to *produce* discovery—ignores the word "permit." Consistent with the plain text, every district court to address the question in this Circuit has joined the overwhelming majority position—that the kind of protective order at issue here is an "order to provide or permit discovery," exactly as the district court held

in this case. The structure and history of the Rules reinforce this common-sense interpretation.

**II.B.** Appellants argue for the first time on appeal that the district court could not enter Rule 37(b)(2) sanctions once it granted summary judgment because the district court was no longer "the court where the action is pending" under that subsection. But that waived argument is wrong. The quoted phrase merely designates the appropriate tribunal to impose sanctions. It does not constrain the timeline for issuing them. Regardless, the MDL was also open at the relevant time.

**II.C.** Mr. Keller and Keller Postman were both subject to sanctions under Rule 37(b)(2)(C). Mr. Keller was responsible as counsel of record who, among other things, signed two affidavits improperly using Confidential Information. Keller Postman, too, was liable for its counsel's misconduct. This Court and numerous sister circuits have affirmed Rule 37(b)(2) sanctions against law firms under similar circumstances.

**II.D.** A finding of willfulness is not required to affirm. Rule 37(b)(2)(C) sanctions are mandatory where, as here, Appellants do not contend that the Rule's exceptions apply. In any case, there was no

clear error in the district court's finding that Appellants willfully violated the Protective Order in Texas.

**III.A.** Appellants' request that this Court reassign the MDL fails because Congress entrusted the JPML with exclusive authority to select MDL judges. Appellate courts do not have the requested authority.

**III.B.** Regardless, Appellants have not demonstrated any factual basis for reassignment. Appellants simply ignore Judge Cote's rulings in their favor, and challenge Judge Cote's adoption of widely accepted positions. These complaints provide absolutely no justification for the unprecedented waste of judicial resources reassigning an MDL judge would entail.

## STANDARD OF REVIEW

This Court "review[s] a district court's imposition of sanctions pursuant to Rule 37 for abuse of discretion." *J.C. v. Zimmerman*, 150 F.4th 136, 145 (2d Cir. 2025).[3] An "abuse of discretion" occurs only if there is "an error of law, a clearly erroneous finding of fact, or a decision that cannot be located within the range of permissible options available

[3] The "more rigorous" review for exercise of "the power … to impose contempt liability," *E.E.O.C. v. Loc. 638*, 81 F.3d 1162, 1171 (2d Cir. 1996), is not implicated here. *Contra* Texas Amicus Br. 2.

to the district court." *Funk v. Belneftekhim*, 861 F.3d 354, 365 (2d Cir. 2017).

## ARGUMENT

### I. The District Court Did Not Abuse Its Discretion In Finding That Appellants Violated The Protective Order.

The Protective Order states Confidential Information "produced or disclosed during this matter … shall not be *used* in any other proceeding or action," barring certain exceptions not applicable here. A-591. Appellants twice violated the Protective Order by using Confidential Information in their legal filings in other actions.

#### A. A party "uses" Confidential Information when it employs the information to bolster its legal position.

There was no "error of law" in the district court's interpretation of the Protective Order. *Funk*, 861 F.3d at 365. Although the Protective Order does not define "use," both sides agree "use" means "'to employ' … 'for the accomplishment of a purpose.'" OB31 (quoting *Use*, Black's Law Dictionary (12th ed. 2024)). Because the entire purpose of employing information in litigation is to win arguments, a party that employs information in a filing to support its legal arguments necessarily "use[s]" the information under the Order.

Appellants resist this straightforward conclusion, insisting that a "*use*" of confidential information requires that the information's confidential contents "be *disclosed*" to the court. OB31 (emphasis in original). Thus, they claim, "information about confidential information can be used and disclosed if it is not itself confidential information." OB30. This tortured reading of "use" finds no support in the Protective Order. Rather, the Order separately addresses "use of confidential information" and "permissible disclosure of confidential information." *See* A-586-592. Parties to the Order must agree *both* not to "disclose" (i.e., reveal) Confidential Information *and* not to "use" (i.e., employ) it. A-605. If every "use" necessarily involved a "disclosure," agreeing not to "disclose" would be sufficient. The Order's "use of different terms" reflects that "they are to be afforded different meanings," and thus refutes Appellants' position on "use." *Contant v. AMA Capital, LLC*, 66 F.4th 59, 67 (2d Cir. 2023).

Unsurprisingly, courts in this Circuit and across the country have recognized that confidential information *can* be "used" even when redacted or withheld, and thus never "disclosed." *See, e.g.*, *Bartlett v. Société Générale de Banque au Liban SAL*, No. 19-CV-00007, 2024 WL

5168734, at *2-4 (E.D.N.Y. Dec. 19, 2024) (impermissible "use" in violation of protective order when a party sourced redacted allegations in another case from confidential information, and claimed redacted information would "provide additional evidence" to support claim); *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, No. 15-CV-2044, 2017 WL 2418742, at *3 (S.D.N.Y. June 5, 2017) ("use of protected information alone, even without disclosure," violated protective order) (collecting cases); *On Command Video Corp. v. LodgeNet Ent. Corp.*, 976 F. Supp. 917, 922 (N.D. Cal. 1997) (plaintiff "clearly violated" protective order that "prohibit[ed] *use*" of protected information where plaintiff relied on the information to file a separate lawsuit but "did not disclose any proprietary information" (emphasis in original)).

Appellants' out-of-circuit cases do not counsel in favor of a different result. *See* OB32, 36. *In re Dual-Deck Video Cassette Recorder Antitrust Litigation* recognized that the plaintiff "committed three technical violations of the [protective] order by using the discovery from the first lawsuit to advance the second"—even though the plaintiff had not "disclosed confidential information." 10 F.3d 693, 694, 695 (9th Cir.

1993). It simply found the conduct did not satisfy the heightened "civil contempt" standard, which is not at issue here. *Id.* at 695; *see also Static Media LLC v. Leader Accessories LLC*, 38 F.4th 1042, 1047-48 (Fed. Cir. 2022) (finding the "severe remedy" of contempt to be inappropriate for party's "disclosure [of confidential information]" to another signatory to the protective order "to develop a joint defense strategy").

Appellants claim the ordinary reading of "use" would untether the Protective Order from its intended purpose of shielding sensitive material from disclosure. *See* OB32. But a prophylactic prohibition on "use" serves exactly that purpose. If a filing does not claim support from confidential material—or seek permission to file that material under seal—there is no risk the court will *order* disclosure of the information. Further, even the most benign attempt to use confidential information in redacted form would increase the risk of disclosure, as parties may make errors or omissions in their efforts to redact. Thus, prohibiting "use" is entirely consistent with the purpose of preventing disclosure.[4]

[4] Insofar as Appellants think this "use" prohibition renders the Protective Order unsound, *see* OB32 (citing *Fierro Cordero v. Stemilt AG Servs., LLC*, 142 F.4th 1201, 1207 (9th Cir. 2025)), the proper

### B. The district court did not err, let alone clearly err, in finding that Appellants "used" Confidential Information.

The district court did not "clearly err[]" in finding Appellants twice "used" Confidential Information in violation of the Protective Order by employing such information to support their jurisdictional arguments. *Funk*, 861 F.3d at 365; *see* SPA-12, SPA-22-23.

To start, Appellants concede they "used" Confidential Information in Florida. OB63 & n.11. They "used" it when they "relied on four documents … Kenvue had designated confidential under the MDL Protective Order" to support their jurisdictional argument. OB18; A-1020-21 (opposition referencing paragraphs of Keller declaration that incorporate confidential documents); A-1016 (opposition quoting confidential document); A-1038-39 (Keller declaration quoting from and describing confidential exhibits); A-1043 (same); A-723-24 (notice designating protected information as confidential). Appellants now refer to the Florida filings as "a mistake, and one that [they] regret." OB63 n.11.

---

course would be to move for vacatur or modification of the Order in the district court—not ask this Court to rewrite the Order.

Nevertheless, the day after moving to strike the Florida filing, Appellants committed a second violation: They again "use[d]" Confidential Information in Texas to try to prove personal jurisdiction and defeat Kenvue's motion to dismiss. In the Texas filings, Appellants affirmatively characterized the Confidential Information as supportive of the court's jurisdiction—assuring the court their allegations were backed by proof. For example, Mr. Keller's affidavit claimed the documents "produced … in the federal multidistrict litigation" showed that certain defendants "directly participated in the failure to warn about risks associated with Tylenol." SPA-10; A-1669(¶11). That factual assertion was central to Appellants' jurisdictional argument. A-1093-94.

Appellants then used redactions of Confidential Information to bolster their factual assertions, signaling additional support. They did so in their memorandum of law, making *unredacted* factual allegations in support of their jurisdictional arguments, while redacting the supporting references to Confidential Information. *See, e.g.*, A-1093-1094. This included ten redacted paragraphs in Mr. Keller's affidavit. *See* A-1669-1675(¶¶12-15,17,23-24,29-31). It also included fully redacted copies of the confidential documents, which were attached as

exhibits with the unredacted promise of "CONFIDENTIAL" information. *See* A-1111-1126, A-1133-1140, A-1149-1163, A-1182-1597, A-1604-1607, A-1622-1628; *see also* SPA-7 (Confidential Information from the MDL used in Florida comprised 11 pages); A-767 (same confidential documents in both Florida and Texas filings). At the hearing on the motion to dismiss, Appellants insisted the redactions contained information that "backed up" their position. A-807. On this record, the district court did not clearly err in finding that Appellants "used" the redacted information to buttress their legal position in Texas. SPA-12.

Compounding these violations, Appellants also asked the Texas court to allow them to file fully *unredacted* copies under seal—"notwithstanding any protective order … Defendants are a party to." A-775, A-777. They insisted the "voluminous discovery in the [MDL]" would "show[] that Defendants are subject to personal jurisdiction in Texas" and "that the State has pleaded sufficient facts to survive a motion to dismiss." A-775. In so arguing, the motion again used the Confidential Information—both to bolster Appellants' jurisdictional

argument, and to attempt an end-run around the Protective Order. *See* SPA-24; A-776 (citing *federal* cases on protective order *modification*).

None of this was a mere disclosure of the *existence* of confidential information. *Contra* OB31. Appellants' analogies to privilege logs and requests to seal are thus inapposite. *See* OB32. Rather, by relying on Confidential Information obtained in MDL discovery—characterizing the information as supporting substantive arguments, using redactions to signal additional support, and offering up unredacted copies "notwithstanding" the Protective Order—Appellants "employed" Kenvue's confidential documents "for the … purpose" of proving jurisdiction and defeating Kenvue's motion to dismiss. That Appellants did not describe that content in detail may have rendered their Texas arguments less persuasive, but it does not change the fact that they relied on the information to support their legal arguments and thus "used" it in direct violation of the Protective Order.[5]

[5] Appellants fault the district court for concluding the Texas filings also violated the Coordination Order. *See* OB40-43. It is correct that the filings did not violate the Coordination Order because that order was not adopted in Texas. The broader point, however, is that Appellants did not use *any* approved mechanism to introduce the documents in that action.

Finally, Appellants cite two briefs in other actions in which they allegedly disclosed information similar to that referenced in the Texas filings. Appellants argue those filings demonstrate the Texas filings did not discuss *confidential* information. OB33-39. Again, however, this misses the point. The question is whether Appellants *used* Confidential Information—not whether they disclosed its confidential aspects. *Supra* § I.A. On the relevant question, neither brief demonstrates Kenvue previously condoned the Texas use. *Before* the Illinois brief was filed, the parties had stipulated to use of the Confidential Information subject to a protective order substantively similar to the MDL Protective Order. *Supra* 13-14. So the Illinois brief was not subject to the same restrictions. That Kenvue expressly consented to the use of the MDL discovery in Illinois—and entered into a protective order there—did not somehow grant consent in Florida or Texas, where there were no stipulations or protective orders in place at the time of Appellants' filings.

Further, the amended Florida filings—which Appellants were forced to submit after concededly violating the Protective Order—did not "use" Confidential Information at all. There was no agreement

allowing use in Florida, and no protective order in place. So Appellants restricted their argument in the amended filing to "publicly available" documents. OB38. Appellants then *removed* that express limitation from the Texas filings—despite also lacking any consent, stipulation, or protective order in that action—highlighting the contrast between the two briefs. *See id.* That different choice correctly resulted in sanctions.

In any event, Appellants' extensive quotations to their Florida and Illinois briefing were never presented to the district court. *Compare* OB19-22, 34-39, *with* ECF 1630. Appellants cannot demonstrate the district court clearly erred in finding "use" based on irrelevant documents the court never saw.

## II. Rule 37(b) Authorized The Sanctions In This Case.

### A. The Protective Order is an "order to provide or permit discovery."

Appellants next argue that, even if they violated the Protective Order, Rule 37 cannot punish those violations. OB43-54. But the text, structure, and history of the Rule demonstrate it encompasses the Protective Order.[6] Unsurprisingly, then, courts in this Circuit and

[6] Because Appellants violated the Protective Order by using Confidential Information in another action, this Court need not decide

nationwide routinely impose Rule 37(b)(2) sanctions for violations of orders just like this one.

### 1. The text of Rule 37(b)(2) encompasses the Protective Order.

We start with the language of Rule 37(b)(2), giving its terms "their plain meaning." *Berk v. Choy*, 607 U.S. 187, 192 (2026). Here, the text authorizes sanctions where a party "fails to obey an order to provide or permit discovery." FRCP 37(b)(2)(A). The word "permit" includes to "make possible," or to "allow." *Permit*, Webster's Collegiate Dictionary (12th ed. 2026); *see also Permit*, Black's Law Dictionary (12th ed. 2024) ("To give opportunity for; to make (something) happen").

Protective orders easily qualify as orders to "permit" discovery because they "make possible" or "allow" discovery. They impose protections on confidential information that are "necessary" for discovery to proceed, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984), and "encourag[e] full disclosure of all evidence that might conceivably be relevant," *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001). Given that protective orders make this exchange of

---

whether the Coordination Order is an "order to provide or permit discovery." *See supra* 31-34 & n.5.

confidential information possible, they are best conceived as "order[s] allowing discovery on conditions." Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2043 (3d ed.); *see* Wright & Miller, 8B § 2289 n.1 (3d ed.) (collecting cases finding that text in Rule 37(b)(2) encompasses "protective order[s]," and identifying only one case which adopted the atextual view that the order must be "for discovery"); *contra* OB47 (relying on inapposite § 2281).

The Protective Order in this case falls neatly within this rule. It makes discovery possible by setting the conditions for the exchange of Confidential Information. *See* A-603 (¶33). That is not an order "*forbidding*" the use of discovery, as Appellants baldly assert (OB52; *see also* OB47), but one "requiring" that confidential information "be revealed only in a specified way," FRCP 26(c)(1)(G). Indeed, all parties to the MDL "relied on the assurance of confidentiality provided by the Protective Order" when they provided confidential discovery. SPA-15; *see also* A-603 (¶33).

This reading aligns with decisions from numerous courts. The Fifth Circuit, for example, has squarely held that a protective order governing confidential discovery, like the order at issue here, is "an

'order to provide or permit discovery' as the phrase is used in Rule 37(b)(2)." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 (5th Cir. 2012) (affirming sanctions). The Eighth and Ninth Circuits have likewise affirmed Rule 37(b)(2) sanctions for violations of similar protective orders. *See Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 773, 784 (9th Cir. 1983); *Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 630, 631 (8th Cir. 1984), *aff'g per curiam,* 580 F. Supp. 913, 916 (N.D. Iowa 1983); *see also Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*, 992 F.2d 932, 934-35 (9th Cir. 1993) (indicating that Rule 37(b)(2) provides for enforcement of protective orders). And the Seventh Circuit has suggested in dicta that a protective order governing confidential discovery qualifies. *See Greviskes v. Univs. Rsch. Ass'n*, 417 F.3d 752, 758-59 (7th Cir. 2005).

Were that not enough, as the district court explained below, SPA-14, courts in this Circuit have routinely held that protective orders governing confidential discovery are enforceable under Rule 37(b)(2). *See, e.g.*, *Matter of Bouchard Transp. Co.,* No. 14-cv-0617, 2018 WL 1581992, at *1 (S.D.N.Y. Mar. 28, 2018); *Schiller v. City of New York*, No. 04-cv-7921, 2007 WL 1623108, at *3 (S.D.N.Y. June 5, 2007)

(collecting cases); *Jay v. Spectrum Brands Holdings, Inc.*, No. 13-cv-8137, 2015 WL 6437581, at *5 (S.D.N.Y. Oct. 20, 2015) (collecting cases); *accord In re Terrorist Attacks on Sep. 11, 2001*, 152 F.4th 396, 399, 403 (2d Cir. 2025) (explaining that district court granted Rule 37(b)(2) sanctions for violation of protective order, and declining interlocutory review on grounds not relevant here).

Appellants argue that Rule 37(b)(2) refers *only* to "orders to *produce* discovery." OB47 (emphasis in original). To be sure, an order to "produce" discovery *is* covered by Rule 37(b)(2) as an order to "provide" discovery. But Appellants cannot read "permit" out of the Rule. Rather, the disjunctive "or" indicates that "provide" and "permit" must "be given separate meanings." *Loughrin v. United States*, 573 U.S. 351, 357 (2014).

Moreover, Appellants' reading makes no sense because, when the drafters intended to limit the Rule's reach to orders to produce discovery, they expressly said so. Rule 37(a), for example, authorizes "order[s] compelling disclosure or discovery," including "order[s] compelling … production." FRCP 37(a)(1), (a)(3)(B). *Those* are orders to "produce." That the drafters used different language in Rule 37(b)(2)

demonstrates the word "permit" "denotes a different idea." *Stanley v. City of Sanford*, 606 U.S. 46, 53 (2025).

Appellants take on this mountain of contrary precedent with citations to two cases—each readily distinguishable. *See* OB49. *Lipscher v. LRP Publications, Inc.* involved a protective order that "narrowed the scope of [a] subpoena." 266 F.3d 1305, 1322 (11th Cir. 2001); *see* FRCP 26(c)(1)(D). That was nothing like an order that makes discovery possible by setting the framework for the exchange of confidential documents. While *Lipscher* broadly reasoned that protective orders do not qualify as order to "provide or permit discovery," 266 F.3d at 1323, that reasoning is atextual for the reasons described above, and "has been questioned by several courts," *Smith & Fuller*, 685 F.3d at 489.

The other case, *Evans v. Griffin*, had nothing to do with protective orders, but rather discussed an order granting leave to take a deposition. 932 F.3d 1043, 1046-47 (7th Cir. 2019).[7] And, as noted

---

[7] *Evans* does not suggest that a Rule 37(a) order is the only order enforceable under Rule 37(b)(2)—indeed, *Evans* analyzed other types of discovery orders. *See id.* at 1046-47. In any event, any such holding limiting enforcement to Rule 37(a) orders would be directly contrary to this Court's precedent in *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 & n.1 (2d Cir. 1991), and the plain text of Rule 37(b)(2), *supra* 40; *infra* 43-44.

above, the Seventh Circuit has suggested the opposite of what Appellants claim when actually evaluating protective orders. *See Greviskes*, 417 F.3d at 759. In any event, "[t]he better view"—and the far more prevalent view among courts nationwide—is "that Rule 37(b) applies to the violation of a protective order generally." Gensler, 1 Fed. R. Civ. P., Rules and Commentary § 37:21 n.2 (collecting cases).

#### 2. The structure of the Rules confirms that Rule 37(b)(2) encompasses the Protective Order.

The "Rules were intended to embody a unitary concept of efficient and meaningful judicial procedure," and "no single Rule can consequently be considered in a vacuum." *Nasser v. Isthmian Lines*, 331 F.2d 124, 127 (2d Cir. 1964); *see also* FRCP 1. The Rules' overall structure reinforces that protective orders are subject to Rule 37(b)(2) sanctions.

Rules 26 and 37 are the bookends of Title V, "Disclosures and Discovery." The rules that precede Rule 37 are generally structured around "individual discovery devices," including Rule 26(c) protective orders. Advisory Committee's Explanatory Statement Concerning 1970 Amendments to Discovery Rules. Rule 37 then "provides sanctions to enforce discovery." *Id.* It authorizes corrective actions with respect to

the gamut of discovery "failures." *See* FRCP 37(a)(1), (b), (c), (d), (e), (f). That these "failures" map onto the range of discovery obligations in Rules 26 to 36, *see id.*, confirms that Rule 37 comprehensively enforces those rules.

Appellants argue that an "order to provide or permit discovery" under Rule 37(b)(2) is limited to "orders requiring a party to engage in discovery" under Rules 37(a), 37(b)(1), 37(c), 37(d), 37(e), and 37(f). OB48-49. This is just wrong. To start, most of Appellants' cited provisions involve *no* orders at all. Further, the only two subsections involving orders do not restrict the scope of Rule 37(b)(2) to the orders described. *See Daval Steel*, 951 F.2d at 1363 & n.1 (Rule 37(b)(2) is not limited to Rule 37(a) orders); FRCP 37(b)(1) (separate sanctions for failure to obey an order to sit for a deposition).

Moreover, the *examples* of "order[s] to provide or permit discovery" are actually listed in Rule 37(b)(2)(A), and evince the term's broad scope. The examples "includ[e] an order under Rule 26(f)," FRCP 37(b)(2)(A), which authorizes sanctions for "violation of a discovery conference order," *Zimmerman*, 150 F.4th at 147 n.6, or "discovery plan[]," *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d

1217, 1227, 1238 (9th Cir. 2006). Such orders include directives like deadlines for meet-and-confer conferences and designating discovery custodians. *See, e.g.*, ECF 340. Thus, Rule 37(b)(2) encompasses not just orders compelling production, but more broadly orders setting the parameters for—and thus allowing—discovery.

Appellants also claim support for their reading from the "specific remedies" listed in Rule 37(b)(2). OB46-47. But those remedies could *also* cure a failure to comply with a protective order. *See, e.g.*, FRCP 37(b)(2)(A)(iv) ("staying further proceedings until the order is obeyed"); FRCP 37(b)(2)(A)(vii) ("contempt of court"); *Hunt v. Enzo Biochem, Inc.*, No. 06-cv-170, 2011 WL 4840713, at *6-7 (S.D.N.Y. Oct. 12, 2011) (applying Rule 37(b) contempt sanction to violation of protective order). The structure of the Rules thus demonstrates that protective orders are included in Rule 37(b)(2).

#### 3. The history of Rule 37(b)(2) further confirms its breadth.

In 1970, amendments to Rule 37(b)(2) "broadened" the scope of orders whose violation could trigger sanctions. *Smith & Fuller*, 685 F.3d at 489. Originally, courts could sanction only violations of specific types of orders. *See* 2add.-3add. (1964 version of FRCP 37(b)(2)). The

amendments replaced the text listing specific orders with the more expansive "order[s] to provide or permit discovery," which "includes" but is not limited to the previously enumerated orders. *See* 5add. (1970 version of FRCP 37(b)(2)). That textual change—from specific to general—indicates that "an order to provide or permit discovery" is intended to encompass a broad range of discovery orders. *Cf. Dunn v. United States*, 442 U.S. 100, 109 (1979) (enumerating specific types of proceedings rather than using more "comprehensive language" is a "choice" demonstrating an "inten[t] … to sweep less broadly").

The Advisory Committee Notes to the 1970 Amendments ("1970 Notes") confirm this intent: "The scope of Rule 37(b)(2) [wa]s *broadened* by extending it to include *any* order 'to provide or permit discovery.'" *Id.* These Notes observe, "[v]arious rules authorize orders for discovery," including "Rule 26(c) as revised," and "Rule 37(b)(2) should provide *comprehensively* for enforcement of *all* these orders." *Id.*; *accord Westinghouse*, 992 F.2d at 934-35 (explaining, in light of the 1970 Notes, that Rule 37(b)(2) provides for the enforcement of Rule 26(c) protective orders).

Appellants argue that when the Advisory Committee said Rule 37(b)(2) should "provide comprehensively for enforcement" of "orders for discovery," including "Rule 26(c)" orders, it did not really mean it. OB50-52 & n.5. Rather, according to Appellants, only Rule 26(c)(2) orders are covered. That tenuous position finds no support in Rule 26 itself. That a Rule 26(c)(2) "order that any party or person provide or permit discovery" is plainly an "order to provide or permit discovery" does not mean a Rule 26(c)(1) protective order is not. Rather, a Rule 26(c)(2) order, like its Rule 37(a) counterpart, is "merely one of the orders that can trigger sanctions under Rule 37(b)(2)." *Daval Steel*, 951 F.2d at 1363 (addressing Rule 37(a)).

And although Appellants point out that courts may use their inherent authority to sanction violations of protective orders, OB55, Rule 37 obviates the need to resort to inherent power. "[I]t is difficult to see why the rulemakers would contemplate a regime in which violation of a Rule 26(c) order is redressable only under non-Rules powers, which, by definition, are designed to defer to applicable Rules." G. Joseph, 1 Sanc. Fed. Law of Lit. Abuse § 48 (2026).

Nor is Appellants' general skepticism of Advisory Committee Notes warranted. OB50. Last year, the U.S. Supreme Court unanimously reaffirmed that the Advisory Committee Notes are "a reliable source of insight into the meaning of a rule." *Waetzig v. Halliburton Energy Servs., Inc.*, 604 U.S. 305, 312 (2025) (collecting cases). Thus, the Advisory Committee Notes can assist this Court in "determin[ing] the intent" of Rule 37(b)(2). *United States ex rel. Eisenstein v. City of New York*, 540 F.3d 94, 97 (2d Cir. 2008). In any event, the Notes simply confirm what the plain text makes readily apparent, and what courts across the country have widely recognized: Protective orders are orders to "provide or permit" discovery within the meaning of Rule 37(b)(2).

### B. The district court had the authority to enter sanctions as the court where the MDL was "pending."

Appellants also contend the district court could not enter Rule 37(b) sanctions because no "action was pending when the District Court issued its order." OB44, OB55 (citing FRCP 37(b)(2)(A)); *see also* OB9-10. Appellants never raised this argument in the district court and therefore waived it. *See generally* ECF 1630; *Doe v. Trump Corp.*, 6 F.4th 400, 410 (2d Cir. 2021) ("It is a well-established general rule that

an appellate court will not consider an issue raised for the first time on appeal."); *supra* 6 (explaining this argument is non-jurisdictional).

In any event, this argument misunderstands Rule 37(b)(2)'s use of "pending." The Rule simply distinguishes between "the district *where* the action is pending," FRCP 37(b)(2), and "the district *where* the deposition is taken," FRCP 37(b)(1). These distinctions "spell[] out the respective roles" of each court. *See* 1970 Notes. They do not specify a particular timeline for issuing sanctions. Thus, dismissal does not cut off a court's authority to award Rule 37 sanctions. *See Heinrichs v. Marshall & Stevens Inc.*, 921 F.2d 418, 421 (2d Cir. 1990) (recognizing "the authority of the district courts to make post-judgment assessments of discovery expenses, and attorney's fees under Rule 37"); *accord Evans v. State of Conn.*, 967 F. Supp. 673, 688 (D. Conn. 1997).

Further, even if Rule 37 imposed a timing requirement, that requirement was easily satisfied here. When the district court entered sanctions, the MDL docket was open, *see* ECF 1526, and new cases were being transferred in on a rolling basis, *see, e.g.*, JPML MDL No. 3043, Orders on Nov. 7, 2024 and Sept. 19, 2025. The district court managed these cases pursuant to an active order to show cause. *See* ECF 1394.

Given that the district court was actively managing the MDL, it makes no sense to argue that the MDL was not "pending" before her.[8] Appellants' waived argument thus offers no basis to overturn the sanctions order on either the law or the facts.

### C. The district court did not abuse its discretion in sanctioning both Appellants under Rule 37(b)(2)(C).

Rule 37(b)(2)(C) authorizes sanctions in the form of "attorney's fees" against "the disobedient party, the attorney advising that party, or both." The district court did not abuse its discretion in sanctioning both Appellants under that provision.

#### 1. The district court did not abuse its discretion by including Mr. Keller in the sanctions order.

Mr. Keller's central role in the violations subjects him to Rule 37(b)(2)(C) sanctions. Under this Rule, a supervisory attorney who was "at all times counsel of record" and "signed many of [the party's] pleadings" is "directly liable" as "an 'advising' attorney" for discovery

---

[8] Appellants also appear to suggest that there was no "action" at all because the sanctions order did not attach to the caption of an individual case. OB9-10. That is not correct, given that the "master pleadings" merged the individual cases into one MDL. *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 n.3 (2015); *see* ECF 841 (master complaint); ECF 901 (master answer).

abuse, notwithstanding that the sanctioned attorney "delegated some … duties to" an attorney he was supervising. *Stuart I. Levin & Assocs., P.A. v. Rogers*, 156 F.3d 1135, 1140 n.3, 1141 (11th Cir. 1998).

That is the case here. As lead counsel, Mr. Keller personally signed two sworn affidavits misusing the MDL discovery. A-1045, A-1676. Mr. Keller knew the original Florida filings had used Confidential Information in violation of the Protective Order—he concedes he "approved" the "corrective action" of moving to strike them and filing amended papers. A-741(¶12). The amended filings, including an amended affidavit from Mr. Keller, A-763, did "not contain, describe, quote, or attach any of Kenvue's confidential information," A-752. And Mr. Keller was informed of "the plan" to build the same Confidential Information into the Texas filings, this time with redactions. A-742(¶16). He concededly "maintained a supervisory role" in the Texas action. OB25; A-766(¶9). And he signed the offending affidavit after "review[ing] [it]" for truthfulness and accuracy. A-742(¶17); A-1667-1676; *supra* 18-19. Given his direct involvement and supervisory position, Mr. Keller was properly sanctioned.

Mr. Keller also argues he is immune from sanctions unless he "advised the relevant party about *disobeying* the relevant order." OB58 (emphasis in original). But "Rule 37(b)(2) does not require the attorney to have advised the client to ignore discovery orders before incurring sanctions." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171-72 (9th Cir. 1994). Nothing in the text of Rule 37(b)(2)(C) requires an attorney to "instigate" the "misconduct." *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1161 (11th Cir. 1993). Thus, Mr. Keller's "willful blindness" does not absolve him. *Id.* at 1161-62. Rather, he may be sanctioned for either "his actions, *or inaction*, in th[e] matter." *Zimmerman*, 150 F.4th at 149 (upholding Rule 37(b)(2) sanctions against a supervisory attorney who delegated "the bulk of the discovery component of the litigation").

Finally, Appellants suggest *no* attorney can be sanctioned for these violations because Rule 37(b)(2)(C) authorizes sanctions against attorneys only in their advisory capacity, and Texas was not a party to the Protective Order. *See* OB57 & n.7. But this argument was never raised in the district court and is therefore waived. *See Trump Corp.*, 6 F.4th at 410; ECF 1630. In any case, Appellants were the "attorneys advising" MDL Plaintiffs—parties who received the Confidential

Information in the MDL on the condition that such information not be "used" in other actions. *See* A-591. Appellants' conduct in Texas rendered the MDL Plaintiffs out of compliance with the Protective Order, making the MDL Plaintiffs a "disobedient party" under Rule 37(b)(2)(C). Thus, Appellants—the "attorney[s] advising" those parties—were properly sanctioned under Rule 37(b)(2)(C).

Consistent with this outcome, courts regularly award sanctions against attorneys for personally violating protective orders for the purpose of benefiting clients in *other* cases—or when the attorneys' violations otherwise did not involve the parties to whom the discovery was produced under the protective order. *See Bartlett*, 2024 WL 5168734, at *4 (imposing Rule 37(b)(2) sanctions on attorneys who violated protective order "for the purpose of sourcing redacted allegations in another case" to benefit a non-party); *Poliquin v. Garden Way, Inc.*, 154 F.R.D. 29, 31 (D. Me. 1994) (imposing Rule 37(b)(2) sanctions on attorney who "violated … the Protective Order by directing a third party … to contact a court reporter to obtain protected material for use in another case"); *Smith & Fuller*, 685 F.3d at 487 (affirming Rule 37(b)(2) sanctions after attorneys inadvertently disseminated

protected information to other personal injury attorneys during a conference).

**2. The district court did not abuse its discretion by including Keller Postman in the sanctions order.**

Appellants contend Keller Postman is not "an attorney" that can be sanctioned under Rule 37(b)(2)(C), because it is a law firm. OB56. But this Court has repeatedly affirmed Rule 37(b)(2) sanctions against law firms—something Appellants just ignore. *See, e.g.*, *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 546 (2d Cir. 2023); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 523, 528 (2d Cir. 1990). And it is hardly alone in doing so. *See, e.g.*, *Smith & Fuller*, 685 F.3d at 487; *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 470 (7th Cir. 1984); *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1049-51 (11th Cir. 1994).

These rulings fit comfortably within this Court's jurisprudence holding law firms accountable for their attorneys' sanctionable conduct. For example, this Court has held that a statute requiring "[a]ny attorney or other person" to "personally" pay costs for vexatious litigation, 28 U.S.C. § 1927, applies to law firms. *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 148 (2d Cir. 2012). As in *Enmon*, "the actions

of … a founding, named partner of a firm" who directly participated in and supervised other attorneys that engaged in the sanctionable conduct can "properly [be] attributed … to the entire firm." *Id.*; *supra* 17-20; *infra* 58-61. Further, just like the firm in *Enmon*, Keller Postman "consistently accepted responsibility for conducting the underlying litigation" "in opposing [Kenvue's] sanctions motion." *Enmon*, 675 F.3d at 148, by repeatedly characterizing its attorneys' actions as those of "Keller Postman," *see* ECF 1630, at 6-9. After taking responsibility for its attorneys' actions, Keller Postman cannot now disclaim it.

Appellants' lone authority, *NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369 (6th Cir. 2022), is inapposite. That case is based on an abrogated Supreme Court precedent, and its interpretation differs from how this Court has interpreted "attorney" in both the Rule 37 and § 1927 contexts. *See id.* at 382-383.

Nor do Appellants gain any traction from their assertion that Kenvue did not specifically move for Rule 37 sanctions against Keller Postman. OB56. To be clear, Kenvue *did* seek a reprimand against "counsel and his law firm" pursuant to the district court's inherent authority. A-625. The district court ordered *both* Mr. Keller and Keller

Postman to respond to the sanctions motion. A-738. That Keller Postman was ultimately included in the fees award involving the sanctionable conduct of its named partner should not come as a shock. *Cf. J.M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 356 (D. Conn. 1981) (Cabranes, J.) (recognizing "discretionary authority under Rule 37 to fashion … sanctions that were more extensive than those requested by the moving parties").

### D. The district court's "willfulness" finding provides no ground for overturning its sanctions order.

Appellants argue the Court "cannot affirm" sanctions because any "violations could not have been willful." OB59. This is wrong on both the law and the facts. On the law, a finding of willfulness is not a required component of a Rule 37(b)(2)(C) award. On the facts, the district court was well within its discretion to find the violations willful.

#### 1. Willfulness is not an element of a Rule 37(b)(2)(C) sanctions award.

The district court was not required to find willfulness before imposing Rule 37(b)(2)(C) sanctions. Rather, "the court *must* order … reasonable expenses … unless the failure was substantially justified or other circumstances make an award of expenses unjust."

FRCP 37(b)(2)(C). Thus, "[s]anctions pursuant to Rule 37(b)(2)(C) are *mandatory*" unless the enumerated exceptions apply. *In re Kwok*, No. 24-1271, 2025 WL 783645, at *3 (2d Cir. Mar. 12, 2025) (summary order) (affirming Rule 37(b)(2)(C) fees award without any discussion of willfulness); *see also Kyros L. P.C.*, 78 F.4th at 546 ("Rule 37(b)(2)(C) … *requires* the court to order" fee sanctions).

On appeal, Appellants do not invoke either exception—exceptions they have the burden to prove. *See* 1970 Notes (explaining that Rule 37(b)(2) "places the burden on the disobedient party to avoid expenses by showing that [one of the two exceptions applies]"). Instead, Appellants argue that this "Court has 'never held that Rule 37(b)(2) expenses are mandatory.'" OB60 & n.9 (quoting *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008)). But the case they cite explicitly found "some merit" in this position—it simply declined to reach that question. *Novak*, 536 F.3d at 178 (noting that Rule 37(b)(2)(C)'s text "certainly suggests that an award of expenses is mandatory unless one of the two exceptions … applies"). In any event, that case predates the more definitive language from this Court quoted

above, which Appellants fail to address.[9] Thus, Appellants' factual arguments about willfulness should not affect the appeal's outcome.

#### 2. The district court did not err, let alone clearly err, in finding willfulness.

Further, while the district court found willfulness in its sanctions order, there was no "clear error" in that finding. *See* SPA-14-20; *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009). "Noncompliance with discovery orders is considered wil[l]ful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Baba v. Japan Travel Bureau Int'l, Inc.*, 165 F.R.D. 398, 402-03 (S.D.N.Y. 1996), *aff'd*, 111 F.3d 2 (2d Cir. 1997) (per curiam); OB60. Appellants do not dispute that their conduct was intentional and within their control, so only the first two inquiries are at issue. OB60-65.

[9] To be sure, in evaluating sanctions, the district court may consider the *Agiwal* factors. As part of that analysis, "willfulness" is "relevant only to the path" the district court chooses. *Zimmerman*, 150 F.4th at 146. As discussed, willfulness simply is *not* required for Rule 37(b)(2)(C) sanctions.

First, the Protective Order was clear: A litigant impermissibly "uses" confidential information when it employs that information for the purpose of winning a legal argument. *Supra* 27-30. Retroactively claiming to have interpreted an order differently does not make the order unclear. *See Teri v. Oxford Mgmt. Servs., Inc.*, No. 05-cv-2777, 2008 WL 11435689, at *6 (E.D.N.Y. Sep. 30, 2008) (counsel "simply interpreted the order in the manner they deemed appropriate and ignored the court's directives").

Next, the evidence supports the district court's inference that Appellants understood the directive, regardless of any ambiguity they now claim. SPA-18-19. Specifically, the "stark contrast" between Appellants' actions in Florida and Texas supports the inference that Appellants knew they could not comply with the Protective Order by simply redacting the specific details of the Confidential Information. *See* SPA-17-20. In the Florida action Mr. Keller was "overseeing," Appellants filed amended papers—a "corrective action" "approved" by Mr. Keller, A-741(¶12)—that "remove[d] *all* use of, and references to" the Confidential Information, A-727. *See also* A-751-52; SPA-17-18. Appellants did not redact the Confidential Information or seek to file it

under seal, demonstrating they understood the Protective Order prohibited any such use.

Yet Appellants did both of those things the next day in Texas. With advance notice to Mr. Keller, A-742, Appellants "filed … a redacted opposition brief and supporting affidavit" signed by Mr. Keller, which relied on and characterized the Confidential Information. SPA-17; A-767-68, A-1093-94, A-1669-75. And even if Appellants could "reasonably have believed" they were somehow toeing the line with their redacted filing, "any such belief would have been fully undermined," *In re Sanctions for Failure to Comply with a Court Order*, 58 B.R. 560, 570 (D. Conn. 1985), by their simultaneous motion to file *unredacted* copies under seal "*notwithstanding any protective order that Defendants are a party to*," A-777; SPA-17. Mr. Keller appeared in the signature block of that motion. A-778. These repeated violations of the Protective Order support an inference that Appellants' conduct was willful. *See Zimmerman*, 150 F.4th at 148. Thus, where the amended Florida filings revealed Appellants' understanding of the Protective Order's boundaries, the Texas filings at minimum supported an inference that Appellants were willing to cross those lines. *See* SPA-18.

Moreover, the record is devoid of evidence that Mr. Keller's actions were driven by a good-faith misunderstanding of the Protective Order. As the district court noted, Mr. Keller's declaration did not adopt the interpretation of the Protective Order he now vigorously defends, or even attest that he believed the Texas filings did not "use" Confidential Information under the Protective Order. SPA-18; *see* A-739-742. That *other* Keller Postman attorneys claimed to act upon that misinterpretation has no bearing on Mr. Keller's willfulness. *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 215 (S.D.N.Y. 2003) ("[S]uch a failure by the partner in charge … rises far above carelessness to willfulness."). And Mr. Keller's willfulness is properly attributed to his law firm. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL-1570, 2023 WL 4561766, at *1, *13 (S.D.N.Y. July 17, 2023) (finding law firm's "violation was willful" based on conduct of "lead partner").

Finally, the district court did not abuse its discretion in declining to hold a full evidentiary hearing to resolve the question of willfulness. *Contra* OB64. A Rule 37(b)(2) "motion for sanctions does not automatically require an evidentiary hearing," particularly where

sanctions are clearly warranted even under the sanctioned party's account of the facts. *Zimmerman*, 150 F.4th at 149. Here, the district court found that even crediting Mr. Keller's declaration, he supplied no justification for the Texas filings. SPA-18. That alone distinguishes this case from Appellants' preferred case, *Flaks v. Koegel*, which involved material issues of fact underlying a request for default judgment. 504 F.2d 702, 709, 712 (2d Cir. 1974) (OB61).[10] In any event, an evidentiary hearing was particularly unnecessary where the fees award was the "mildest" sanction that the district court could have imposed. *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979); SPA-20.

---

[10] *Schoenberg v. Shapolsky Publishers, Inc.* is even further off the mark. *See* OB3-4. It held only that the sanctioned party should have been allowed to participate in the hearing that was held; it did not require a hearing in the first instance. 971 F.2d 926, 936 (2d Cir. 1992). To the extent Appellants suggest that due process requires "an opportunity for a hearing on the record," OB4 (quoting *Schoenberg*, 971 F.2d at 936), this Court has held that "opposing the motion [for sanctions] in [an] affidavit" suffices, *Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1286 (2d Cir. 1994); *see* A-739-743.

For all of the reasons discussed above, the Court should reject Appellants' atextual, counter-factual arguments that they are not subject to Rule 37 sanctions.[11]

## III. Appellants' Reassignment Request Is Beyond This Court's Authority And Substantively Meritless.

Finally, Appellants urge this Court to "remand with instructions to reassign the MDL to a different judge," arguing that the course of the litigation thus far "might reasonably cause an objective observer to question the judge's impartiality." OB65, OB69. That argument is meritless twice over. First, the Court lacks authority to reassign an MDL, which explains why Appellants have not identified a single instance of a court of appeals doing so. And regardless, Appellants' request is wholly unjustified on the merits. Judge Cote's thorough, careful administration of this case—including her efforts to rein in Appellants' repeated violations of her Protective Order—provides no basis for questioning the district court's impartiality.

---

[11] If this Court were inclined to conclude that the district court erred in imposing sanctions under Rule 37(b)(2), it should remand for the district court to consider whether sanctions are warranted under its inherent authority.

### A. This Court lacks authority to reassign an MDL.

The federal statute governing MDLs provides that "pretrial proceedings shall be conducted by a judge or judges to whom such actions are assigned by the judicial panel on multidistrict litigation." 28 U.S.C. § 1407(b). That statute gives the Judicial Panel on Multidistrict Litigation, composed of seven judges carefully selected by the Chief Justice of the United States, "the *exclusive* power to select the judge" in each MDL. *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 600 (7th Cir. 2014); *see also* Robert Klonoff, *The Judicial Panel on Multidistrict Litigation: The Virtues of Unfettered Discretion*, 89 UMKC L. Rev. 1003, 1016 (2021).

Appellants ignore this dispositive statutory constraint. Their effort to override the JPML's assignment decision is wholly inconsistent with § 1407(b). While Appellants do not describe the statutory source of authority they rely on, it appears to be an appellate court's residual authority to "require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106; *see* OB65-69.[12] But using

---

[12] Appellants did not ask Judge Cote to recuse herself under 28 U.S.C. § 144 or 28 U.S.C. § 455, and they do not argue on appeal that Judge

that authority to override the JPML's choice would render illusory the JPML's exclusive assignment authority under § 1407(b). Indeed, allowing a panel to eclipse the JPML in that manner would contravene the "basic principle of statutory construction that a specific statute ... controls over a general provision." *In re Stoltz*, 315 F.3d 80, 93 (2d Cir. 2002). And "[i]t would be anomalous for a three-judge panel from a single circuit to override the [discretionary] judgment" of the JPML. *Uber Techs., Inc. v. JPML*, 131 F.4th 661, 667-68 (9th Cir. 2025) (declining to grant mandamus relief from JPML's centralization order). That is particularly so given that the JPML "brings to bear decades of experience with more than a thousand MDL proceedings, … includ[ing] some of the most complex and challenging cases in the history of the federal courts." *FedEx Ground Package Sys., Inc. v. JPML*, 662 F.3d 887, 891 (7th Cir. 2011).

Unsurprisingly, Appellants do not point to any case supporting their radical position that an appellate panel may order reassignment in an MDL—and Kenvue is aware of none. Indeed, the Eleventh Circuit

Cote should have done so. Any such claim would have no factual basis and is waived in any event.

has cast doubt on this position, observing that under § 1407(b), it was "not obvious" that it "ha[d] the authority to reassign" an MDL. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1272 (11th Cir. 2021) (concluding it "need not decide that question because reassignment [was] not justified"). The Court's lack of authority alone precludes Appellants' request.

### B. There is no factual basis for reassigning the MDL.

Appellants' litany of complaints against Judge Cote would not warrant reassignment even if that relief were procedurally available. OB66-69. As this Court has made clear, reassignment is "an extraordinary remedy ... [to] be reserved for the extraordinary case." *United States v. Jacobs*, 955 F.2d 7, 10 (2d Cir. 1992); *see Ketcham v. City of Mount Vernon*, 992 F.3d 144, 152 (2d Cir. 2021) (same). The only "extraordinary" thing about this case is Appellants' effort to convert a sanctions award into a strategic opportunity to reassign an MDL.

This Court "consider[s] three factors in determining whether reassignment is warranted: (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings

determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *Gonzalez v. Hasty*, 802 F.3d 212, 225 (2d Cir. 2015).

Appellants ignore the first and third factors. That is unsurprising. The record is devoid of support for the notion that Judge Cote "would not accept [this Court's] decision or follow [its] instructions on remand." *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 450 (2d Cir. 2024). Nor can Appellants reasonably dispute that "reassignment to another judge" would result in a monumental "waste" of judicial resources and "duplication of effort" in this MDL. *Id*. Four years ago, the JPML assigned Judge Cote to this case because she is "thoroughly familiar with the nuances of complex, multidistrict litigation by virtue of having presided over eight MDLs which have involved a broad range of complex issues, including pharmaceutical products liability." ECF 1 at 4. In the years that followed, Judge Cote has issued numerous rulings affecting hundreds of actions, becoming closely familiar with the intricacies of this litigation. *See* A-1-575

(Docket Report). Reassignment would result in a massive loss of expertise, forcing another judge to educate herself on a host of cross-cutting issues like preemption and general causation, and undermining (rather than promoting) "the just and efficient conduct of this litigation." ECF 1 at 1.

Unable to address these considerations, Appellants focus only on the second factor. They argue the "course of this litigation 'might reasonably cause an objective observer to question the judge's impartiality' when it comes to this litigation and the Keller Postman attorneys leading it." OB66. Not so. Appellants' first set of gripes is centered on the MDL—they assert Judge Cote went to "great lengths" to "terminate" it. OB67. But, in fact, Judge Cote *rejected* major case-dispositive defense motions: preemption motions, *Rutledge*, 182 F.4th at 201, and a Rule 8 motion to dismiss, ECF 602. And Judge Cote refused to certify an interlocutory appeal of these rulings. ECF 804.

Further, when Judge Cote granted Defendants' Rule 702 motions, her opinion was nothing like the caricature Appellants paint. *See* OB66-67. Appellants ignore that the panel *affirmed* Judge Cote's exclusion of two experts. *Rutledge*, 182 F.4th at 199-201. Although, as to three other

experts, the panel disagreed with Judge Cote about how closely to engage with the science under the recent amendments to Rule 702, *see id.* at 185-99, it acknowledged that finding the right balance is "easier said than done," *id.* at 193 n.25. Its disagreement with Judge Cote about where to strike that balance is not grounds for reassignment. That is particularly so where this Court found Judge Cote's "review of the expert testimony … thorough and well-documented" and her "reasoning … considered and extensive," noting concerns that were "not … unreasonable." *Id.* at 185, 191, 193, 196. And where no one in the scientific community—neither the FDA nor any other scientific or medical organization—has ever adopted the view of Plaintiffs' experts that prenatal use of acetaminophen causes autism and ADHD. *Supra* 8; *see also* ECF 1381 at 38-46. As Appellants' own authority makes clear, OB66, Judge Cote's "searching review of the record" should not now trigger a presumption of bias. *Spiegel v. Schulmann*, 604 F.3d 72, 83 (2d Cir. 2010) (denying reassignment); *see also Ketcham*, 992 F.3d at 152 (denying reassignment where the district court's "reasoning," while found to be erroneous, "was not absurd or illegitimate").

Appellants' smattering of other complaints about the Rule 702 order rings hollow. They assert Judge Cote "disregarded the party-presentation rule" in excluding the opinions of one expert. OB66. But the *Rutledge* panel never gave credence to these accusations, and *affirmed* the relevant exclusion. *Compare* Appellants' Br. 50-51, *Rutledge*, No. 24-916 (2d Cir. July 17, 2024), Dkt. 118, 2024 WL 7020270, at *50-51 (OB2, OB66), *with Rutledge*, 182 F.4th at 175, 199-200. Appellants also argue that Judge Cote's request for information relating to their clients' proposed medication warning—including her invitation for the views of the FDA—somehow demonstrates bias. OB66. But Appellants have it backwards. Given the "great public health significance" of this case, it was critical for the district court "to get this right," ECF 1381 at 49, and gathering the views of Plaintiffs and relevant experts in the field facilitated the court's ability to do so.

Appellants pivot to unwarranted attacks on various aspects of Judge Cote's sanctions ruling. *See* OB67-68. They fault Judge Cote for failing to consider evidence they did not present. *Compare* OB67 (alleging "interpretation of the Protective Order … conflict[ing]" with Kenvue's conduct), *with supra* § I.B (describing failure to submit

Florida and Illinois briefing to district court). And they blame Judge Cote for adopting positions that courts have embraced in this Circuit and nationwide. *See supra* § I.A ("use"); § II.A ("order to provide or permit discovery"); § II.B (action pending); § II.C (law firms proper parties); § II.D (willfulness not a component of fees award). Judge Cote's lack of engagement with evidence she never saw, and her decision to side with sister courts on the law, could not reasonably result in a perception of bias.

Beyond these substantive attacks, Appellants take issue with Judge Cote's process, arguing she should have held a hearing or required a meet-and-confer. OB68. But a hearing was not required, given the undisputed facts. *Supra* § II.D. And Kenvue *did* meet and confer after the Florida violation. *See* SPA-25-26. Judge Cote's Individual Practices did not require Kenvue "to play whack-a-mole" and confer after every violation. *Id.*; *see* Hon. Denise L. Cote, Individual Practices in Civil Cases (Dec. 19, 2024), Rule 2.C ("If th[e] meet-and-confer process does not resolve the dispute, the party may file a letter-motion …."); *see also LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995) (observing that this Court must "accord considerable

deference" to a district court's "interpretation and application of its own local rule").

Unsurprisingly, this case is absolutely nothing like Appellants' cases where this Court has ordered reassignment. *See, e.g.*, *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 142 (2d Cir. 2007) (judge "rendered a visceral judgment on appellant's personal credibility" by characterizing his statements as "nonsense," "drivel," a "fraud," and a "lie"); *Cullen v. United States*, 194 F.3d 401, 407-08 (2d Cir. 1999) (reassigning to preserve appearance of fairness in the event district judge reached the same determination of criminal defendant's credibility on the same question on remand); *Ligon v. City of New York*, 736 F.3d 118, 126-27 (2d Cir. 2013) (judge's comments in public interviews suggested she was "aligned with the plaintiffs"); *United States v. Londono*, 100 F.3d 236, 242-43 (2d Cir. 1996) (judge obstructed appellate review and "impl[ied] without basis" that this Court had information it did not have).

For all these reasons, even if this Court had the authority to reassign an MDL—which it does not—Judge Cote's decision to issue the

"mildest" sanction available under Rule 37 cannot possibly justify reassignment. *See Cine Forty-Second St.*, 602 F.2d at 1066.

## CONCLUSION

This Court should affirm the district court's imposition of sanctions under Rule 37 and deny Appellants' request for reassignment.

Respectfully submitted,

*/s/Naomi J. Scotten*

Naomi J. Scotten
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
(212) 506-5116

Jessica L. Brennan
BARNES & THORNBURG LLP
67 East Park Place, Suite 1000
Morristown, New Jersey 07960
(973) 775-6101

Cesar Lopez-Morales
Elise M. Baranouski
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 339-8400

Julia Hu
ORRICK, HERRINGTON & SUTCLIFFE LLP
120 Broadway, 5th Floor
Santa Monica, California 90401
(310) 633-2800

*Counsel for Defendant-Appellee Johnson & Johnson Consumer Inc., n/k/a Kenvue Brands LLC*

October 23, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Second Circuit Local Rule 32.1(a)(4) because this brief contains 13,566 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Naomi J. Scotten*
Naomi J. Scotten
*Counsel for Defendant-Appellee*

# STATUTORY ADDENDUM

Fed. R. Civ. P. 37 (1964) .......... 1add.

Fed. R. Civ. P. 37 (1970) .......... 4add.

# UNITED STATES CODE

## 1964 EDITION

CONTAINING THE GENERAL AND PERMANENT LAWS
OF THE UNITED STATES, IN FORCE
ON JANUARY 3, 1965

Prepared and published under authority of Title 1, U. S. Code, Section 202 (c)
by the Committee on the Judiciary of the House of Representatives

## VOLUME SEVEN

TITLE 27—INTOXICATING LIQUORS

TO

TITLE 32—NATIONAL GUARD

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1965

relevant documents described in and exhibited with the request or of the truth of any relevant matters of fact set forth in the request. If a plaintiff desires to serve a request within 10 days after commencement of the action leave of court, granted with or without notice, must be obtained. Copies of the documents shall be served with the request unless copies have already been furnished. Each of the matters of which an admission is requested shall be deemed admitted unless, within a period designated in the request, not less than 10 days after service thereof or within such shorter or longer time as the court may allow on motion and notice, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part, together with a notice of hearing the objections at the earliest practicable time. If written objections to a part of the request are made, the remainder of the request shall be answered within the period designated in the request. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party deny only a part or a qualification of a matter of which an admission is requested, he shall specify so much of it as is true and deny only the remainder.

**(b) Effect of admission.**

Any admission made by a party pursuant to such request is for the purpose of the pending action only and neither constitutes an admission by him for any other purpose nor may be used against him in any other proceeding. As amended Dec. 27, 1946, effective March 19, 1948.

#### Notes of Advisory Committee on Rules

Compare similar rules: Former Equity Rule 58 (last paragraph, which provides for the admission of the execution and genuineness of documents); English Rules Under the Judicature Act (The Annual Practice, 1937) O. 32; Ill. Rev. Stat. (1937) ch. 110, § 182 and Rule 18 (Ill. Rev. Stat. (1937) ch. 110, § 259.18); 2 Mass. Gen. Laws (Ter. Ed., 1932) ch. 231, § 69; Mich. Court Rules Ann. (Searl, 1933) Rule 42; N. J. Comp. Stat. (2 Cum. Supp. 1911–1924) N. Y. C. P. A. (1937) §§ 322, 323; Wis. Stat. (1935) § 327.22.

#### Notes of Advisory Committee on Amendments to Rules

*Note.* The first change in the first sentence of Rule 36 (a) and the addition of the new second sentence, specifying when requests for admissions may be served, bring Rule 36 in line with amended Rules 26 (a) and 33. There is no reason why these rules should not be treated alike. Other provisions of Rule 36 (a) give the party whose admissions are requested adequate protection.

The second change in the first sentence of the rule [subdivision (a)] removes any uncertainty as to whether a party can be called upon to admit matters of fact other than those set forth in relevant documents described in and exhibited with the request. In *Smyth* v. *Kaufman*, C. C. A. 2d, 1940, 114 F. 2d 40, it was held that the word "therein", now stricken from the rule [said subdivision] referred to the request and that a matter of fact not related to any document could be presented to the other party for admission or denial. The rule of this case is now clearly stated.

The substitution of the word "served" for "delivered" in the third sentence of the amended rule [said subdivision] is in conformance with the use of the word "serve" elsewhere in the rule and generally throughout the rules. See also Notes to Rules 13 (a) and 33 herein. The substitution [in said subdivision] of "shorter or longer" for "further" will enable a court to designate a lesser period than 10 days for answer. This conforms with a similar provision already contained in Rule 33.

The addition of clause (1) [in said subdivision] specifies the method by which a party may challenge the propriety of a request to admit. There has been considerable difference of judicial opinion as to the correct method, if any, available to secure relief from an allegedly improper request. See Commentary, Methods of Objecting to Notice to Admit, 1942, 5 Fed. Rules Serv. 835; *International Carbonic Engineering Co.* v. *Natural Carbonic Products, Inc.*, S. D. Cal. 1944, 57 F. Supp. 248. The changes in clause (1) are merely of a clarifying and conforming nature.

The first of the added last two sentences [in said subdivision] prevents an objection to a part of a request from holding up the answer, if any, to the remainder. See similar proposed change in Rule 33. The last sentence strengthens the rule by making the denial accurately reflect the party's position. It is taken, with necessary changes, from Rule 8 (b).

#### Cross References

Expenses on refusal to admit, see rule 37 (c).

Use of admissions on motions for summary judgment, see rule 56 (c).

#### Forms

Request for admission under this rule, see form 25, Appendix of Forms.

## Rule 37.—Refusal to Make Discovery: Consequences

**(a) Refusal to answer.**

If a party or other deponent refuses to answer any question propounded upon oral examination, the examination shall be completed on other matters or adjourned, as the proponent of the question may prefer. Thereafter, on reasonable notice to all persons affected thereby, he may apply to the court in the district where the deposition is taken for an order compelling an answer. Upon the refusal of a deponent to answer any interrogatory submitted under Rule 31 or upon the refusal of a party to answer any interrogatory submitted under Rule 33, the proponent of the question may on like notice make like application for such an order. If the motion is granted and if the court finds that the refusal was without substantial justification the court shall require the refusing party or deponent and the party or attorney advising the refusal or either of them to pay to the examining party the amount of the reasonable expenses incurred in obtaining the order, including reasonable attorney's fees. If the motion is denied and if the court finds that the motion was made without substantial justification, the court shall require the examining party or the attorney advising the motion or both of them to pay to the refusing party or witness the amount of the reasonable expenses incurred in opposing the motion, including reasonable attorney's fees.

**(b) Failure to comply with order.**

(1) *Contempt.* If a party or other witness refuses to be sworn or refuses to answer any question after being directed to do so by the court in the district in which the deposition is being taken, the refusal may be considered a contempt of that court.

(2) *Other Consequences.* If any party or an officer or managing agent of a party refuses to obey an order made under subdivision (a) of this rule requiring him to answer designated questions, or an

order made under Rule 34 to produce any document or other thing for inspection, copying, or photographing or to permit it to be done, or to permit entry upon land or other property, or an order made under Rule 35 requiring him to submit to a physical or mental examination, the court may make such orders in regard to the refusal as are just, and among others the following:

(i) An order that the matters regarding which the questions were asked, or the character or description of the thing or land, or the contents of the paper, or the physical or mental condition of the party, or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(ii) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing in evidence designated documents or things or items of testimony, or from introducing evidence of physical or mental condition;

(iii) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(iv) In lieu of any of the foregoing orders or in addition thereto, an order directing the arrest of any party or agent of a party for disobeying any of such orders except an order to submit to a physical or mental examination.

**(c) Expenses on refusal to admit.**

If a party, after being served with a request under Rule 36 to admit the genuineness of any documents or the truth of any matters of fact, serves a sworn denial thereof and if the party requesting the admissions thereafter proves the genuineness of any such document or the truth of any such matter of fact, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making such proof, including reasonable attorney's fees. Unless the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance, the order shall be made.

**(d) Failure of party to attend or serve answers.**

If a party or an officer or managing agent of a party wilfully fails to appear before the officer who is to take his deposition, after being served with a proper notice, or fails to serve answers to interrogatories submitted under Rule 33, after proper service of such interrogatories, the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party.

**(e) Failure to Respond to Letters Rogatory.**

A subpoena may be issued as provided in Title 28, U. S. C., § 1783, under the circumstances and conditions therein stated.

**(f) Expenses against United States.**

Expenses and attorney's fees are not to be imposed upon the United States under this rule. As amended Dec. 29, 1948, effective Oct. 20, 1949.

NOTES OF ADVISORY COMMITTEE ON RULES

The provisions of this rule authorizing orders establishing facts or excluding evidence or striking pleadings, or authorizing judgments of dismissal or default, for refusal to answer questions or permit inspection or otherwise make discovery, are in accord with *Hammond Packing Co.* v. *Arkansas*, 212 U. S. 322, 29 S. Ct. 370, 53 L. Ed. 530, 15 Ann. Cas. 645 (1909), which distinguishes between the justifiable use of such measures as a means of compelling the production of evidence, and their unjustifiable use, as in *Hovey* v. *Elliott*, 167 U. S. 409, 17 S. Ct. 841, 42 L. Ed. 215 (1897), for the mere purpose of punishing for contempt.

AMENDMENTS

1948—The amendment effective October 1949, substituted the reference to "Title 28, U. S. C., § 1783" in subdivision (e) for the reference to "the act of July 3, 1926, ch. 762, § 1 (44 Stat. 835), U. S. C., Title 28, § 711."

CROSS REFERENCES

Failure to attend taking of a deposition or to serve subpoena, payment of expenses, see rule 30 (g).

## VI.—TRIALS

### RULE 38.—JURY TRIAL OF RIGHT

**(a) Right preserved.**

The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.

**(b) Demand.**

Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.

**(c) Same: Specification of issues.**

In his demand a party may specify the issues which he wishes so tried; otherwise he shall be deemed to have demanded trial by jury for all the issues so triable. If he has demanded trial by jury for only some of the issues, any other party within 10 days after service of the demand or such lesser time as the court may order, may serve a demand for trial by jury of any other or all of the issues of fact in the action.

**(d) Waiver.**

The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5 (d) constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

NOTES OF ADVISORY COMMITTEE ON RULES

This rule provides for the preservation of the constitutional right of trial by jury as directed in the enabling act (act of June 19, 1934, 48 Stat. 1064, U. S. C., Title 28, former § 723c (now § 2072)), and it and the next rule make definite provision for claim and waiver of jury trial, following the method used in many American states and in England and the British Dominions. Thus the claim must be made at once on initial pleading or appearance under Ill. Rev. Stat. (1937) ch. 110, § 188; 6 Tenn. Code Ann. (Williams, 1934) § 8734; compare Wyo. Rev. Stat. Ann. (1931) § 89–1320 (with answer or reply); within 10 days after the pleadings are completed or the case is at issue under 2 Conn. Gen. Stat. (1930) § 5624; Hawaii Rev. Laws (1935) § 4101; 2 Mass. Gen. Laws (Ter. Ed. 1932) ch. 231, § 60; 3 Mich. Comp. Laws (1929) § 14263; Mich. Court Rules Ann. (Searl, 1933) Rule 33 (15 days);

# UNITED STATES CODE

## 1970 EDITION

CONTAINING THE GENERAL AND PERMANENT LAWS
OF THE UNITED STATES, IN FORCE
ON JANUARY 20, 1971

Prepared and published under authority of Title 1, U.S. Code, Section 202 (c)
by the Committee on the Judiciary of the House of Representatives

## VOLUME SEVEN

TITLE 27—INTOXICATING LIQUORS
TO
TITLE 31—MONEY AND FINANCE

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1971

courts view admissions as the equivalent of sworn testimony *E.g., Ark.-Tenn Distributing Corp.* v. *Breidt*, 209 F.2d 359 (3d Cir. 1954); *United States* v. *Lemons*, 125 F. Supp. 686 (W.D.Ark.1954); 4 *Moore's Federal Practice* ¶ 36.08 (2d ed. 1966 Supp.). At least in some jurisdictions a party may rebut his own testimony, *e.g., Alamo* v. *Del Rosario*, 98 F.2d 328 (D.C. Cir. 1938), and by analogy an admission made pursuant to Rule 36 may likewise be thought rebuttable. The courts in *Ark-Tenn* and *Lemons, supra*, reasoned in this way, although the results reached may be supported on different grounds. In *McSparran* v. *Hanigan*, 225 F.Supp. 628, 636–637 (E.D.Pa.1963), the court held that an admission is conclusively binding, though noting the confusion created by prior decisions.

The new provisions give an admission a conclusively binding effect, for purposes only of the pending action, unless the admission is withdrawn or amended. In form and substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party. Louisell, *Modern California Discovery* § 8.07 (1963); 2A Barron & Holtzoff, *Federal Practice and Procedure* § 838 (Wright ed. 1961). Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated. Field & McKusick, *Maine Civil Practice* § 36.4 (1959); Finman, *supra*, 71 Yale L.J. 371, 418–426; Comment, 56 Nw. U.L.Rev. 679, 682–683 (1961).

Provision is made for withdrawal or amendment of an admission. This provision emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice. *Cf. Moosman* v. *Joseph P. Blitz, Inc.*, 358 F.2d 686 (2d Cir. 1966).

CROSS REFERENCES

Expenses on refusal to admit, see rule 37 (c).

Use of admissions on motions for summary judgment, see rule 56 (c).

FORMS

Request for admission under this rule, see form 25, Appendix of Forms.

## RULE 37.—FAILURE TO MAKE DISCOVERY: SANCTIONS

**(a) Motion for order compelling discovery.**

A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows:

(1) *Appropriate court.* An application for an order to a party may be made to the court in which the action is pending, or, on matters relating to a deposition, to the court in the district where the deposition is being taken. An application for an order to a deponent who is not a party shall be made to the court in the district where the deposition is being taken.

(2) *Motion.* If a deponent fails to answer a question propounded or submitted under Rules 30 or 31, or a corporation or other entity fails to make a designation under Rule 30(b) (6) or 31(a), or a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before he applies for and order.

If the court denies the motion in whole or in part, it may make such protective order as it would have been empowered to make on a motion made pursuant to Rule 26(c).

(3) *Evasive or incomplete answer.* For purposes of this subdivision an evasive or incomplete answer is to be treated as a failure to answer.

(4) *Award of expenses of motion.* If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

If the motion is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

If the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

**(b) Failure to comply with order.**

(1) *Sanctions by court in district where deposition is taken.* If a deponent fails to be sworn or to answer a question after being directed to do so by the court in the district in which the deposition is being taken, the failure may be considered a contempt of that court.

(2) *Sanctions by court in which action is pending.* If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b) (6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including and order made under subdivision (a) of this rule or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

(E) Where a party has failed to comply with an order under Rule 35(a) requiring him to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this subdivision, unless the party failing to comply shows that he is unable to produce such person for examination.

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

**(c) Expenses on failure to admit.**

If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that he might prevail on the matter, or (4) there was other good reason for the failure to admit.

**(d) Failure of party to attend at own deposition or serve answers to interrogatories or respond to request for inspection.**

If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take his deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c).

**(e) Subpoena of person in foreign country.**

A subpoena may be issued as provided in Title 28 U.S.C. § 1783, under the circumstances and conditions therein stated.

**(f) Expenses against United States.**

Except to the extent permitted by statute, expenses and fees may not be awarded against the United States under this rule. As amended Dec. 29, 1948, eff. Oct. 20, 1949; Mar. 30, 1970, eff. July 1, 1970.

NOTES OF ADVISORY COMMITTEE ON RULES

The provisions of this rule authorizing orders establishing facts or excluding evidence or striking pleadings, or authorizing judgments of dismissal or default, for refusal to answer questions or permit inspection or otherwise make discovery, are in accord with *Hammond Packing Co.* v. *Arkansas*, 212 U. S. 322, 29 S. Ct. 370, 53 L. Ed. 530, 15 Ann. Cas. 645 (1909), which distinguishes between the justifiable use of such measures as a means of compelling the production of evidence, and their unjustifiable use, as in *Hovey* v. *Elliott*, 167 U. S. 409, 17 S. Ct. 841, 42 L. Ed. 215 (1897), for the mere purpose of punishing for contempt.

NOTES OF ADVISORY COMMITTEE ON 1970 AMENDMENT TO RULES

Rule 37 provides generally for sanctions against parties or persons unjustifiably resisting discovery. Experience has brought to light a number of defects in the language of the rule as well as instances in which it is not serving the purposes for which it was designed. See Rosenberg, *Sanctions to Effectuate Pretrial Discovery*, 58 Col.L.Rev. 480 (1958). In addition, changes being made in other discovery rules requiring conforming amendments to Rule 37.

Rule 37 sometimes refers to a "failure" to afford discovery and at other times to a "refusal" to do so. Taking note of this dual terminology, courts have imported into "refusal" a requirement of "wilfullness." See *Roth* v. *Paramount Pictures Corp.*, 8 F.R.D. 31 (W.D.Pa. 1948); *Campbell* v. *Johnson*, 101 F. Supp. 705, 707 (S.D.N.Y. 1951). In *Societe Internationale* v. *Rogers*, 357 U.S. 197 (1958), the Supreme Court concluded that the rather random use of these two terms in Rule 37 showed no design to use them with consistently distinctive meanings, that "refused" in Rule 37(b)(2) meant simply a failure to comply, and that wilfullness was relevant only to the selection of sanctions, if any, to be imposed. Nevertheless, after the decision in *Societe*, the court in *Hinson* v. *Michigan Mutual Liability Co.*, 275 F. 2d 537 (5th Cir. 1960) once again ruled that "refusal" required wilfullness. Substitution of "failure" for "refusal" throughout Rule 37 should eliminate this confusion and bring the rule into harmony with the *Societe Internationale* decision. See Rosenberg, *supra*, 58 Col. L.Rev. 480, 489–490 (1958).

*Subdivision (a)*. Rule 37(a) provides relief to a party seeking discovery against one who, with or without stated objections, fails to afford the discovery sought. It has always fully served this function in relation to depositions, but the amendments being made to Rules 33 and 34 give Rule 37(a) added scope and importance. Under existing Rule 33, a party objecting to interrogatories must make a notion for court hearing on his objections. The changes now made in Rules 33 and 37(a) make it clear that the interrogating party must move to compel answers, and the motion is provided for in Rule 37(a). Existing Rule 34, since it requires a court order prior to production of documents or things or permission to enter on land, has no relation to Rule 37(a). Amendments of Rules 34 and 37(a) create a procedure similiar to that provided for Rule 33.

*Subdivision (a)(1)*. This is a new provision making clear to which court a party may apply for an order compelling discovery. Existing Rule 37(a) refers only to the court in which the deposition is being taken; nevertheless, it has been held that the court where the action is pending has "inherent power" to compel a party deponent to answer. *Lincoln Laboratories, Inc.* v. *Savage Laboratories, Inc.*, 27 F.R.D. 476 (D.Del. 1961). In relation to Rule 33 interrogatories and Rule 34 requests for inspection, the court where the action is pending is the appropriate enforcing tribunal. The new provision eliminates the need to resort to inherent power by spelling out the respective roles of the court where the action is

pending and the court where the deposition is taken. In some instances, two courts are available to a party seeking to compel answers from a party deponent. The party seeking discovery may choose the court to which he will apply, but the court has power to remit the party to the other court as a more appropriate forum.

*Subdivision* (*a*)(*2*). This subdivision contains the substance of existing provisions of Rule 37(a) authorizing motions to compel answers to questions put at depositions and to interrogatories. New provisions authorize motions for orders compelling designation under Rules 30(b) (6) and 31(a) and compelling inspection in accordance with a request made under Rule 34. If the court denies a motion, in whole or part, it may accompany the denial with issuance of a protective order. Compare the converse provision in Rule 26(c).

*Subdivision* (*a*)(*3*). This new provision makes clear that an evasive or incomplete answer is to be considered, for purposes of subdivision (a), a failure to answer. The courts have consistently held that they have the power to compel adequate answers. *E.g., Cone Mills Corp.* v. *Joseph Bancroft & Sons Co.*, 33 F.R.D. 318 (D.Del. 1963). This power is recognized and incorporated into the rule.

*Subdivision* (*a*)(*4*). This subdivision amends the provisions for award of expenses, including reasonable attorney's fees, to the prevailing party or person when a motion is made for an order compelling discovery. At present, an award of expenses is made only if the losing party or person is found to have acted without substantial justification. The change requires that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified. The test of "substantial justification" remains, but the change in language is intended to encourage judges to be more alert to abuses occurring in the discovery process.

On many occasions, to be sure, the dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court. In such cases, the losing party is substantially justified in carrying the matter to court. But the rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists. And the potential or actual imposition of expenses is virtually the sole formal sanction in the rules to deter a party from pressing to a court hearing frivolous requests for or objections to discovery.

The present provision of Rule 87(a) that the court shall require payment if it finds that the defeated party acted without "substantial justification" may appear adequate, but in fact it has been little used. Only a handful of reported cases include an award of expenses, and the Columbia Survey found that in only one instance out of about 50 motions decided under Rule 37(a) did the court award expenses. It appears that the courts do not utilize the most important available sanction to deter abusive resort to the judiciary.

The proposed change provides in effect that expenses should ordinarily be awarded unless a court finds that the losing party acted justifiably in carrying his point to court. At the same time, a necessary flexibility is maintained, since the court retains the power to find that other circumstances make an award of expenses unjust—as where the prevailing party also acted unjustifiably. The amendment does not significantly narrow the discretion of the court, but rather presses the court to address itself to abusive practices. The present provision that expenses may be imposed upon either the party or his attorney or both is unchanged. But it is not contemplated that expenses will be imposed upon the attorney merely because the party is indigent.

*Subdivision* (*b*). This subdivision deals with sanctions for failure to comply with a court order. The present captions for subsections (1) and (2) entitled, "Contempt" and "Other Consequences," respectively, are confusing. One of the consequences listed in (2) is the arrest of the party, representing the exercise of the contempt power. The contents of the subsections show that the first authorizes the sanction of contempt (and no other) by the court in which the deposition is taken, whereas the second subsection authorizes a variety of sanctions, including contempt, which may be imposed by the court in which the action is pending. The captions of the subsections are changed to deflect their contents.

The scope of Rule 37(b)(2) is broadened by extending it to include any order "to provide or permit discovery," including orders issued under Rules 37(a) and 35. Various rules authorize orders for discovery—*e. g.*, Rule 35 (b)(1), Rule 26(c) as revised. Rule 37(d). See Rosenberg, *supra*, 58 Col.L.Rev. 480, 484–486. Rule 37(b)(2) should provide comprehensively for enforcement of all these orders. *Cf. Societe Internationale* v. *Rogers*, 357 U.S. 197, 207 (1958). On the other hand, the reference to Rule 34 is deleted to conform to the changed procedure in that rule.

A new subsection (E) provides that sanctions which have been available against a party for failure to comply with an order under Rule 35(a) to submit to examination will now be available against him for his failure to comply with a Rule 35(a) order to produce a third person for examination, unless he shows that he is unable to produce the person. In this context, "unable" means in effect "unable in good faith." See *Societe Internationale* v. *Rogers*, 357 U.S. 197 (1958).

Subdivision (b)(2) is amplified to provide for payment of reasonable expenses caused by the failure to obey the order. Although Rules 37(b) (2) and 37(d) have been silent as to award of expenses, courts have nevertheless ordered them on occasion. *E.g., United Sheeplined Clothing Co.* v. *Arctic Fur Cap Corp.*, 165 F.Supp. 193 (S.D.N.Y.1958); *Austin Theatre, Inc.* v. *Warner Bros. Picture, Inc.*, 22 F.R.D. 302 (S.D.N.Y.1958). The provision places the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust. Allocating the burden in this way conforms to the changed provisions as to expenses in Rule 37(a), and is particularly appropriate when a court order is disobeyed.

An added reference to directors of a party is similar to a change made in subdivision (d) and is explained in the note to that subdivision. The added reference to persons designated by a party under Rules 30(b)(6) or 31(a) to testify on behalf of the party carries out the new procedure in those rules for taking a deposition of a corporation or other organization.

*Subdivision* (*c*). Rule 37(c) provides a sanction for the enforcement of Rule 36 dealing with requests for admission. Rule 36 provides the mechanism whereby a party may obtain from another party in appropriate instances either (1) an admission, or (2) a sworn and specific denial, or (3) a sworn statement "setting forth in detail the reasons why he cannot truthfully admit or deny." If the party obtains the second or third of these responses, in proper from, Rule 36 does not provide for a pretrial hearing on whether the response is warranted by the evidence thus far accumulated. Instead, Rule 37 (c) is intended to provide posttrial relief in the form of a requirement that the party improperly refusing the admission pay the expenses of the other side in making the necessary proof at trial

Rule 37(c), as now written, addresses itself in terms only to the sworn denial and is silent with respeot to the statement of reasons for an inability to admit or deny. There is no apparent basis for this distinction, since the sanction provided in Rule 37(c) should deter all unjustified failures to admit. This omission in the rule has caused confused and diverse treatment in the courts. One court has held that if a party gives inadequate reasons, he should be treated before trial as having denied the request, so that Rule 37(c) may apply. *Bertha Bldg. Corp.* v. *National Theatres Corp.*, 15 F.R.D. 339 (E.D.N.Y.1954). Another has held that the party should be treated as having admitted the request. *Heng Hsin Co.* v. *Stern, Morgenthau & Co.*, 20 Fed. Rules Serv. 36a.52, Case 1 (S.D.N.Y. Dec. 10, 1954). Still another has ordered a new response, without indicating what the outcome should be if the new response were inadequate. *United States Plywood Corp.* v. *Hudson Lumber Co.*, 127 F.Supp. 489, 497–498 (S.D.N.Y.1954). See generally Finman, *The Request for Admissions in Federal Civil Procedure*, 71 Yale L.J. 371, 426–430 (1962). The amendment eliminates this defect in Rule 37(c) by bringing within its scope all failures to admit.

Additional provisions in Rule 37(c) protect a party from having to pay expenses if the request for admission

was held objectionable under Rule 36(a) or if the party failing to admit had reasonable ground to believe that he might prevail on the matter. The latter provision emphasizes that the true test under Rule 37(c) is not whether a party prevailed at trial but whether he acted reasonably in believing that he might prevail.

*Subdivision (d)*. The scope of subdivision (d) is broadened to include responses to requests for inspection under Rule 34, thereby conforming to the new procedures of Rule 34.

Two related changes are made in subdivision (d): the permissible sanctions are broadened to include such orders "as are just"; and the requirement that the failure to appear or respond be "wilful" is eliminated. Although Rule 37(d) in terms provides for only three sanctions, all rather severe, the courts have interpreted it as permitting softer sanctions than those which it sets forth. *E.g., Gill* v. *Stolow*, 240 F.2d 669 (2d Cir. 1957); *Saltzman* v. *Birrell*, 156 F.Supp. 538 (S.D.N.Y.1957); 2A Barron & Holtzoff, *Federal Practice and Procedure* 554–557 (Wright ed. 1961). The rule is changed to provide the greater flexibility as to sanctions which the cases show is needed.

The resulting flexibility as to sanctions eliminates any need to retain the requirement that the failure to appear or respond be "wilful." The concept of "wilful failure" is at best subtle and difficult, and the cases do not supply a bright line. Many courts have imposed sanctions without referring to wilfullness. *E.g., Milewski* v. *Schneider Transportation Co.*, 238 F.2d 397 (6th Cir. 1956); *Dictograph Products, Inc.* v. *Kentworth Corp.*, 7 F.R.D. 543 (W.D.Ky.1947). In addition, in view of the possibility of light sanctions, even a negligent failure should come within Rule 37(d). If default is caused by counsel's ignorance of Federal practice, cf. *Dunn.* v. *Pa. R. R.*, 96 F. Supp. 597 (N.D.Ohio 1951), or by his preoccupation with another aspect of the case, *cf. Maurer-Neuer, Inc.* v. *United Packinghouse Workers*, 26 F.R.D. 139 (D.Kans. 1960), dismissal of the action and default judgment are not justified, but the imposition of expenses and fees may well be. "Wilfullness" continues to play a role, along with various other factors, in the choice of sanctions. Thus, the scheme conforms to Rule 37(b) as construed by the Supreme Court in *Societe Internationale* v. *Rogers*, 357 U.S. 197, 208 (1958).

A provision is added to make clear that a party may not properly remain completely silent even when he regards a notice to take his deposition or a set of interrogatories or requests to inspect as improper and objectionable. If he desires not to appear or not to respond, he must apply for a protective order. The cases are divided on whether a protective order must be sought. Compare *Collins* v. *Wayland*, 139 F.2d 677 (9th Cir. 1944), *cert. den.* 322 U.S. 744; *Bourgeois* v. *El Paso Natural Gas Co.*, 20 F.R.D. 358 (S.D.N.Y.1957); *Loosley* v. *Stone*, 15 F.R.D. 373 (S.D.Ill. 1954), with *Scarlatos* v. *Kulukundis*, 21 F.R.D. 185 (S.D.N.Y.1957); *Ross* v. *True Temper Corp.*, 11 F.R.D. 307 (N.D.Ohio1951). Compare also Rosenberg, *supra*, 58 Col. L.Rev. 480, 496 (1958) with 2A Barron & Holtzoff, *Federal Practice and Procedure* 530–531 (Wright ed. 1961). The party from whom discovery is sought is afforded, through Rule 26(c), a fair and effective procedure whereby he can challenge the request made. At the same time, the total non-compliance with which Rule 37(d) is concerned may impose severe inconvenience or hardship on the discovering party and substantially delay the discovery process. *Cf.* 2B Barron & Holtzoff, *Federal Practice and Procedure* 306–307 (Wright ed. 1961) (response to a subpoena).

The failure of an officer or managing agent of a party to make discovery as required by present Rule 37(d) is treated as the failure of the party. The rule as revised provides similar treatment for a director of a party. There is slight warrant for the present distinction between officers and managing agents on the one hand and directors on the other. Although the legal power over a director to compel his making discovery may not be as great as over officers or managing agents, *Campbell* v. *General Motors Corp.*, 13 F.R.D. 331 (S.D.N.Y.1952), the practical differences are negligible. That a director's interests are normally aligned with those of his corporation is shown by the provisions of old Rule 26(d)(2), transferred to 32(a)(2) (deposition of director of party may be used at trial by an adverse party for any purpose) and of Rule 43(b) (director of party may be treated at trial as a hostile witness on direct examination by any adverse party). Moreover, in those rare instances when a corporation is unable through good faith efforts to compel a director to make discovery, it is unlikely that the court will impose sanctions. *Cf. Societe Internationale* v. *Rogers*, 357 U.S. 197 (1958).

*Subdivision (e)*. The change in the caption conforms to the language of 28 U.S.C. § 1783, as amended in 1964.

*Subdivision (f)*. Until recently, costs of a civil action could be awarded against the United States only when expressly provided by Act of Congress, and such provision was rarely made. See H.R.Rept.No. 1535, 89th Cong., 2d Sess., 2–3 (1966). To avoid any conflict with this doctrine, Rule 37(f) has provided that expenses and attorney's fees may not be imposed upon the United States under Rule 37. See 2A Barron & Holtzoff, *Federal Practice and Procedure* 857 (Wright ed. 1961).

A major change in the law was made in 1966, 80 Stat. 308, 28 U.S.C. § 2412 (1966), whereby a judgment for costs may ordinarily be awarded to the prevailing party in any civil action brought by or against the United States. Costs are not to include the fees and expenses of attorneys. In light of this legislative development, Rule 37(f) is amended to permit the award of expenses and fees against the United States under Rule 37, but only to the extent permitted by statute. The amendment brings Rule 37(f) into line with present and future statutory provisions.

AMENDMENTS

1948—The amendment effective October 1949, substituted the reference to "Title 28, U. S. C., § 1783" in subdivision (e) for the reference to "the act of July 3, 1926, ch. 762, § 1 (44 Stat. 835), U. S. C., Title 28, § 711."

CROSS REFERENCES

Failure to attend taking of a deposition or to serve subpoena, payment of expenses, see rule 30 (g).

## VI.—TRIALS

### RULE 38.—JURY TRIAL OF RIGHT

**(a) Right preserved.**

The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.

**(b) Demand.**

Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.

**(c) Same: Specification of issues.**

In his demand a party may specify the issues which he wishes so tried; otherwise he shall be deemed to have demanded trial by jury for all the issues so triable. If he has demanded trial by jury for only some of the issues, any other party within 10 days after service of the demand or such lesser time as the court may order, may serve a demand for trial by jury of any other or all of the issues of fact in the action.

**(d) Waiver.**

The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5 (d) constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.