# 26-1302(L)

## 26-1556 (CON)

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

ASHLEY C. KELLER & KELLER POSTMAN LLC,

*Interested Parties-Appellants,*

v.

JOHNSON & JOHNSON CONSUMER INC. N/K/A KENVUE BRANDS LLC,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
DISTRICT JUDGE DENISE COTE (NO. 1:22-MD-3043)

## REPLY BRIEF FOR APPELLANTS

ASHLEY L.F. BARRIERE
KELLER POSTMAN LLC
150 N. Riverside Plaza
Suite 4100
Chicago, IL 60606
(312) 741-5222

WARREN D. POSTMAN
JOHN J. SNIDOW
KELLER POSTMAN LLC
1101 Connecticut Ave. NW
Suite 1100
Washington, DC 20036
(202) 918-1123

*Attorneys for Appellants Ashley C. Keller and Keller Postman LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

CORPORATE DISCLOSURE STATEMENT .......... 1

ARGUMENT .......... 4

I. Kenvue Concedes Appellants Did Not Violate the Coordination Order. .......... 4

II. The Texas Filing Did Not Violate the Protective Order. .......... 4

A. The Protective Order Does Not Apply to Any Part of the Texas Filing. .......... 6

B. Kenvue's Criticisms of the Texas Filing All Involve Permitted Conduct. .......... 8

C. Kenvue Does Not Offer a Coherent Definition of "Use." .......... 13

III. Kenvue's Reading of Rule 37(b) Cannot Be Reconciled with the Plain Text. .......... 16

A. The Protective Order Is Not an "Order to Provide or Permit Discovery." .......... 17

B. Appellants Did Not "Advise" a Disobedient Party. .......... 25

C. Rule 37(b) Did Not Authorize the District Court to Impose Sanctions When No Action Was Pending. .......... 30

IV. The District Court Abused Its Discretion to Find Willfulness. .......... 31

V. Reassignment Is Permitted and Warranted. .......... 33

CONCLUSION .......... 36

CERTIFICATE OF COMPLIANCE .......... 37

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.I. Trade Fin., Inc. v. Petra Bank*,
989 F.2d 76 (2d Cir. 1993) ........................................ 31

*ACLU v. NSA*,
925 F.3d 576 (2d Cir. 2019) ........................................ 10

*Arconic Inc. v. Universal Alloy Corp.*,
No. 1:15-cv-01466, 2018 WL 4839225
(N.D. Ga. July 31, 2018) ........................................ 14

*Bartlett v. Société Générale de Banque au Liban SAL*,
No. 19-CV-00007, 2024 WL 5168734
(E.D.N.Y. Dec. 19, 2024) ........................................ 14, 15, 26

*Blake v. R&B Corp. of Va.*,
No. 4:23-cv-66, 2023 WL 4646102 (E.D. Va. July 20, 2023) .............. 20

*In re Bolar Pharm. Co. Sec. Litig.*,
966 F.2d 731 (2d Cir. 1992) ........................................ 32

*Crocs, Inc. v. Joybees, Inc.*,
No. 1:21-CV-02859-GPG-SBP, 2023 WL 8851997
(D. Colo. Dec. 8, 2023) ........................................ 7, 14

*Daval Steel Prods. v. M/V Fakredine*,
951 F.2d 1357 (2d Cir. 1991) ........................................ 24

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
10 F.3d 693 (9th Cir. 1993) ........................................ 7, 14

*Eastman Kodak Co. v. STWB, Inc.*,
452 F.3d 215 (2d Cir. 2006) ........................................ 10, 29

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021) ........................................ 33

## TABLE OF AUTHORITIES
## (*cont'd*)

**Page(s)**

*Evans v. Griffin*,
932 F.3d 1043 (7th Cir. 2019) .......... 23

*Everytown for Gun Safety Support Fund v. ATF*,
984 F.3d 30 (2d Cir. 2020) .......... 29

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
702 F.2d 770 (9th Cir. 1983) .......... 23

*Flaks v. Koegel*,
504 F.2d 702 (2d Cir. 1974) .......... 32

*Fontainebleau Fla. Hotel, LLC v. Jacob*,
No. 25-CV-20251, 2026 WL 548040
(S.D. Fla. Feb. 27, 2026) .......... 22

*Gelboim v. Bank of Am. Corp.*,
574 U.S. 405 (2015) .......... 30

*Greviskes v. Univs. Rsch. Ass'n*,
417 F.3d 752 (7th Cir. 2005) .......... 9

*Heinrichs v. Marshall & Stevens Inc.*,
921 F.2d 418 (2d Cir. 1990) .......... 31

*Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*,
No. 99-C-0762, 1999 WL 528545 (N.D. Ill. July 19, 1999) .......... 14

*Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*,
38 F.3d 1279 (2d Cir. 1994) .......... 32

*J.C. v. Zimmerman*,
150 F.4th 136 (2d Cir. 2025) .......... 16, 21

*Kyros Law P.C. v. World Wrestling Ent., Inc.*,
78 F.4th 532 (2d Cir. 2023) .......... 28

**TABLE OF AUTHORITIES**
**(*cont'd*)**

**Page(s)**

*Ligon v. City of New York*,
736 F.3d 118 (2d Cir. 2013) ........................................................ 34

*Lipscher v. LRP Publ'ns, Inc.*,
266 F.3d 1305 (11th Cir. 2001) ..................................................... 22

*Liteky v. United States*,
510 U.S. 540 (1994) ........................................................................ 34

*Mackler Prods., Inc. v. Cohen*,
225 F.3d 136 (2d Cir. 2000) ................................................ 34, 35, 36

*NPF Franchising, LLC v. SY Dawgs, LLC*,
37 F.4th 369 (6th Cir. 2022) ........................................................... 28

*On Command Video Corp. v. LodgeNet Ent. Corp.*,
976 F.Supp. 917 (N.D. Cal. 1997) .................................................. 15

*Pavelic & LeFlore v. Marvel Ent. Grp.*,
493 U.S. 120 (1989) ........................................................................ 28

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
192 F.Supp.3d 400 (S.D.N.Y. 2016) ................................................ 14

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*,
685 F.3d 486 (5th Cir. 2012) ..................................................... 24, 26

*Static Media LLC v. Leader Accessories LLC*,
38 F.4th 1042 (Fed. Cir. 2022) ...................................................... 7, 14

*Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*,
250 F.R.D. 426 (D. Neb. 2008) ....................................................... 14

*Stuart I. Levin & Assocs., P.A. v. Rogers*,
156 F.3d 1135 (11th Cir. 1998) ..................................................... 26

## TABLE OF AUTHORITIES
## (*cont'd*)

**Page(s)**

*Suture Express, Inc. v. Cardinal Health 200, LLC*,
No. 12-2760, 2015 WL 5021959 (D. Kan. Aug. 24, 2015) .......... 13

*In re Terrorist Attacks on Sep. 11, 2001*,
152 F.4th 396 (2d Cir. 2025) .......... 23

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
900 F.2d 522 (2d Cir. 1990) .......... 28

*Tucker v. Ohtsu Tire & Rubber Co.*,
191 F.R.D. 495 (D. Md. 2000) .......... 12, 13

*United States v. Nat'l Med. Enters., Inc.*,
792 F.2d 906 (9th Cir. 1986) .......... 23

*Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*,
No. 16-cv-13456, 2019 WL 3229749
(E.D. Mich. July 17, 2019) .......... 20

*Webster v. Fall*,
266 U.S. 507 (1925) .......... 26

*Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*,
992 F.2d 932 (9th Cir. 1993) .......... 23

**Statutes**

28 U.S.C. § 2106 .......... 33, 34

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page(s)**

## Other Authorities

Fed. R. Civ. P.
11(c)(1) ........ 25, 28
16(b)(1) ........ 20
16(b)(3)(B) ........ 20
16(f)(2) ........ 25
26(c) advisory committee's note to 1970 amendment ........ 20
26(f) (1980) (am. 1993) ........ 20
26(f)(1) ........ 20
26(f)(2) ........ 20
26(f)(3) ........ 20
26(g)(3) ........ 25
34(a)(1) ........ 19
34(a)(2) ........ 19
37 ........ 3
37 advisory committee's note to 1970 amendment ........ 19, 20
37(a)(2) ........ 17
37(a)(3)(B)(iv) ........ 19
37(b)(2) ........ 30
37(b)(2)(A) ........ 17
37(b)(2)(C) ........ 17, 25, 32

Rule 26 notes ........ 19

## CORPORATE DISCLOSURE STATEMENT

Appellant Keller Postman LLC is a private limited liability company that has no parent corporation. It is not a publicly traded company and no publicly held corporation owns 10% or more of its stock.

There are *six* independent reasons to reverse. *First*, the sanctions order rested in significant part on a putative violation of the Coordination Order. It went so far as to say "there can be little argument" that Appellants violated the "Coordination Order" "willful[ly]." SPA-16; SPA-17. Strikingly, Kenvue does not even attempt to defend this conclusion and concedes error. Appellee's Brief ("Opp.") 34 n.5.

*Second*, there is no dispute that *all* of the information disclosed in Texas was publicly available, which places it outside of the Protective Order. Kenvue claims this argument was waived, but the undisputed facts are simply support for an argument that Appellants pressed below.

*Third*, a lawyer does not improperly "use" confidential information by merely referring to its existence or thinking about it while advocating for a client. Kenvue concedes that the Florida filing did not use confidential information. That is an acknowledgment that Appellants' definition of "use" is correct. Most courts that have considered the question have adopted this definition for the very reasons Appellants articulate. At minimum, ample authority confirms that Appellants' definition of "use" was *reasonable*, making sanctions improper.

*Fourth*, the Protective Order does not qualify as an order "to provide or permit discovery." Kenvue's myopic focus on the word "permit" elides the crucial point: Rule 37 involves orders commanding a *disclosing* party "to provide or permit discovery." Text, context, and structure all confirm the point.

*Fifth*, Rule 37 sanctions are authorized only against a "disobedient party" or the "attorney advising that party." Appellants are neither. It does Kenvue no good to observe that Mr. Keller was no mere bystander in acetaminophen litigation. The record is undisputed that he did not advise a party about the act that purportedly violated a Rule 37 order.

*Sixth*, Rule 37 only authorizes sanctions where an action is pending. No Keller Postman client had an action pending before the district court. Kenvue's attempt to turn the MDL into an individual "action" defies Supreme Court precedent. Rule 37 does not authorize sanctions without a pending action and, contrary to Kenvue's waiver assertion, this is subsidiary support for an argument raised below.

Given the district court's numerous errors, the Court should order reassignment on remand. Kenvue claims, without authority, that this

Court lacks that remedial power, but it flows from the same statutory grant authorizing reversal.

## ARGUMENT

### I. Kenvue Concedes Appellants Did Not Violate the Coordination Order.

The district court insisted "there can be little argument" about whether Appellants violated the "Coordination Order" and did so "willful[ly]." SPA-16; SPA-17. Kenvue does not defend this conclusion. Opp.34 n.5 ("It is correct that the filings did not violate the Coordination Order."). Kenvue's skilled counsel surely were loath to make this concession. Their inability to credibly defend a position the district court said was *inarguable* shows how irregular the district court's approach really was.

### II. The Texas Filing Did Not Violate the Protective Order.

Kenvue asserts Appellants violated the Protective Order because they "used" confidential information in the Texas filing. But all the information used in Texas was publicly available. Kenvue's position suffers from another problem: it depends on an unstated definition of "use" that departs from the dictionary definition. So it is instructive to

highlight what Kenvue agrees does *not* constitute "use": "the amended Florida filings . . . did not 'use' Confidential Information at all." Opp.35. Kenvue's concession proves that a lawyer does not "use" confidential information by merely referring to the existence of confidential information or altering his legal strategy based on confidential information. The amended Florida filing does both. The Texas filing merely follows suit.

Kenvue cannot paper over this concession by stating that "a party 'uses' Confidential Information when it employs the information to bolster its legal position." Opp.27. That begs the question: how can a party "bolster" its legal position with confidential information it has not disclosed? Not by describing its existence—the Florida filing did that. Not by considering the information to formulate litigation strategy—the Florida filing did that too.

Without a workable definition of "use," Kenvue cobbles together references to (1) public information, (2) statements describing the existence of confidential information, and (3) case strategy decisions Appellants made based on confidential information, and calls the

resulting mosaic improper "use." This is no basis to claim a *clear* violation of the Protective Order.

### A. <u>The Protective Order Does Not Apply to Any Part of the Texas Filing.</u>

Given Kenvue's nebulous definition of "use," it is important to review what "use" is *not*.

*First*, the Protective Order "shall not apply to any publicly available information." A-590. Whether using, disclosing, employing, or considering, if the object of those verbs is publicly available information, the Protective Order "shall not apply." A-590.

*Second*, the fact that confidential information exists—including summary descriptions of its existence—is not confidential information. If it were, a party could not file or respond to a motion to seal, challenge privilege logs, or file a redacted brief. Each of those reveals that confidential information exists and describes it in general terms. The amended Florida filing did the same. Such descriptions are not confidential and, as Kenvue concedes, do not "use" confidential information.

*Third*, an attorney's consideration of confidential information without disclosure is not "use" under the Protective Order. Admittedly,

an attorney who decides to serve discovery, file a complaint, or respond to a motion based on what she learned from confidential discovery could be said to have "used" that information in a colloquial sense. But that definition would wrench the Protective Order from its purpose and convert Rule 26 from a tool meant to safeguard confidential information into a weapon to harass adversaries who engage in multifront litigation. Opening Br. ("OB") 32-33.

It is difficult to overstate the impact of interpreting "use" in this maximalist way. Counsel for plaintiffs often represent clients with related claims in multiple jurisdictions. Once counsel learns information in discovery, they "cannot achieve total amnesia." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695-96 (9th Cir. 1993) ("*In re Dual-Deck*").

If counsel violates a "use" restriction simply by *considering* confidential information, they would be unable to pursue the interests of their clients in other cases. As multiple courts have observed, that result "would be absurd." *Id.* at 695; *Static Media LLC v. Leader Accessories LLC*, 38 F.4th 1042, 1048 (Fed. Cir. 2022); *Crocs, Inc. v. Joybees, Inc.*, No. 1:21-CV-02859-GPG-SBP, 2023 WL 8851997, at *8 (D. Colo. Dec. 8,

2023) (noting "the weight of authority" rejects this expansive view), *R. & R. adopted by* 2024 WL 5055671 (D. Colo. Jan. 25, 2024).

Kenvue seems to agree when it concedes that "the amended Florida filings . . . did not 'use' Confidential Information at all." Opp.35. The amended Florida filings stated: "Discovery in similar cases shows J&J directly participated in the failure to warn about risks associated with Tylenol." OB.38 (quoting Fla. Decl. ¶ 10). This statement refers to the existence of information Kenvue designated confidential, so Kenvue cannot maintain that considering or disclosing the existence of confidential information constitutes "use."

### B. Kenvue's Criticisms of the Texas Filing All Involve Permitted Conduct.

Without a coherent definition of "use," Kenvue is reduced to listing facts. But these facts all involve permissible conduct.

As a threshold matter, *all* of the purported Protective Order violations were references to publicly available information. OB.37-39. Appellants said, "discovery in similar cases shows Johnson & Johnson directly participated in the failure to warn about risks associated with Tylenol," SPA-10, but a *publicly available* court filing *already* said "[d]iscovery in similar cases shows J&J directly participated in the

failure to warn about risks associated with Tylenol." OB.38 (quoting Fla. Decl. ¶ 10). Appellants said, "discovery produced [in the MDL] shows that Defendants are subject to personal jurisdiction," A-775, but a *publicly available* court filing *already* said that "discovery in prior similar actions . . . supports the Complaint's jurisdictional allegations." OB.39 (quoting Fla. Br. 4 n.2). And Appellants said, "Johnson & Johnson exercised ultimate control over Tylenol until it divested" its consumer business, A-1667, but a *publicly available* court filing *already* said that "J&J exercised ultimate control over Tylenol and its label from 1959 [until] 2023," the date of the divestment. OB.37 (quoting Fla. Br. 4-5). The Protective Order "shall not apply" to any of this. A-590; *see also Greviskes v. Univs. Rsch. Ass'n*, 417 F.3d 752, 759 (7th Cir. 2005) (disclosure of file "not marked 'Confidential' . . . was not technically in violation of the protective order").

Kenvue responds that some of the publicly available information was filed subject to a protective order in Illinois. Opp.35. But it does not matter *how* the information became public. What matters is whether the information *was public*. It was. Kenvue argues that the Texas filing did not make clear that it was referring to "publicly available" information.

Opp.36. But the Protective Order does not apply to "publicly available information." Whether the information was *flagged* as public is irrelevant.

Kenvue argues waiver because "quotations to the[] Florida and Illinois briefing were never presented to the district court." Opp.36. But this Court "may entertain additional support that a party provides for a proposition presented below." *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221 (2d Cir. 2006). Appellants expressly argued that they did not "use" or "disclose" confidential information in the Texas filing. ECF 1630 at 10 ("Keller Postman did not use or disclose any confidential information to anyone, including the Texas court."). The publicly available Florida and Illinois filings provide "additional support . . . for a proposition presented below." *Eastman Kodak*, 452 F.3d at 221; *ACLU v. NSA*, 925 F.3d 576, 599 n.126 (2d Cir. 2019) (taking judicial notice of documents that were not "explicitly raise[d] in [the] briefing below[,] . . . [because] reference to these statements does not constitute a new argument, . . . but simply new evidence in support of old arguments").

Even ignoring that all the information in the Texas filing was public, Kenvue still cannot show a violation of the Protective Order.

*First*, Kenvue complains that Appellants "affirmatively characterized the Confidential Information as supportive of the court's jurisdiction—assuring the court their allegations were backed by proof." Opp.32. But this characterization described the existence of confidential information in the *exact* same way as the Florida filing (OB.38), which Kenvue (again) concedes did not improperly "use" confidential information (Opp.35).

*Second*, Kenvue complains that Appellants "used redactions of Confidential Information to bolster their factual assertions, signaling additional support." Opp.32. But black boxes are not confidential information, and that is all the Texas court received. If Appellants attached a fully blacked-out page at the end of this brief without describing what it was, would that violate the Protective Order? If they then stated that, behind the black rectangle, confidential information existed, would that change the analysis? It is difficult to see why that should matter under an order that regulates the disclosure and use of "confidential information." That Appellants "used redactions of Confidential Information" confirms that they only used the *existence* of confidential information and not confidential information itself.

*Third*, Kenvue complains that "Appellants also asked the Texas court to allow them to file fully unredacted copies under seal—'notwithstanding any protective order.'" Opp.33 (emphasis omitted) (citation omitted). But asking a court to order the production of information is not using or disclosing it. Nor is it an "end-run around the Protective Order." Opp.34. Rather, it reflects Appellants' permissible consideration of undisclosed confidential information to shape litigation strategy. The Texas court had authority to order the documents produced in the Texas action. And parties cannot "avoid discovery in one case merely because [they] disclosed the same material . . . in another case." *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 500 (D. Md. 2000).

*Fourth*, Kenvue relies on statements uttered at a February 12 hearing in Texas *not* by Mr. Keller, but by his colleague. Opp.19-20, 33. Kenvue refers to "Appellants'" actions at the hearing, but Kenvue knows Mr. Keller was not there. *See* A-794-95. And, presumably for this reason, the district court never based its decision on these statements. SPA-12, 22-23.

### C. <u>Kenvue Does Not Offer a Coherent Definition of "Use."</u>

While Kenvue does not directly defend a maximalist definition of "use," parts of its brief flirt with it and so it must be addressed.

*First*, Kenvue asks this Court to interpret "use" as a "prophylactic prohibition." Opp.30. If a "filing does not claim support from confidential material," there is "no risk the court will *order* disclosure of the information." Opp.30. Kenvue is *admitting* that its "prophylactic" definition is intended to block production of relevant materials in a later proceeding because they were produced in an earlier proceeding.

That is the position courts find absurd. Protective orders are not a liability shield for defendants in a second action. *See, e.g.*, *Tucker*, 191 F.R.D. at 500 ("absurd" that a party could "avoid discovery in one case merely because it disclosed the same material . . . in another case"); *Suture Express, Inc. v. Cardinal Health 200, LLC*, No. 12-2760, 2015 WL 5021959, at *4-5 (D. Kan. Aug. 24, 2015) (protective orders are "not intended to immunize individuals or even parties from subsequent suits"). That is why Kenvue cites *zero* cases endorsing the weaponized "prophylaxis" theory of protective orders. Opp.30.

Courts routinely provide a "reasonable reading" of "use" that "connect[s] [the protective order's] prohibition[] to its purpose," namely "protection against disclosure of commercial secrets." *In re Dual-Deck*, 10 F.3d at 695. Copious case law likewise holds that disclosure of the mere existence of confidential information does not constitute "use" of confidential information itself. *See, e.g.*, *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 250 F.R.D. 426, 433-34 (D. Neb. 2008); *Static Media*, 38 F.4th at 1048; *Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*, No. 99-C-0762, 1999 WL 528545, at *2-3 (N.D. Ill. July 19, 1999); *Crocs, Inc.*, 2023 WL 8851997, at *6; *Arconic Inc. v. Universal Alloy Corp.*, No. 1:15-cv-01466, 2018 WL 4839225, at *4 (N.D. Ga. July 31, 2018); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 192 F.Supp.3d 400, 405 (S.D.N.Y. 2016). Kenvue criticizes Appellants for relying on "out-of-circuit" cases (Opp.29), but Kenvue's *district court* cases are hardly more binding on this Court than those cited above from the Ninth and Federal *Circuits*.

Moreover, Kenvue's district court decisions appear to apply the maximalist approach that Kenvue at other times disavows. In *Bartlett v. Société Générale de Banque au Liban SAL*, the court held that even *considering* prior discovery to "craft claims" in another case would be

improper "use." No. 19-CV-00007, 2024 WL 5168734, at *4 (E.D.N.Y. Dec. 19, 2024). In *On Command Video Corp. v. LodgeNet Entertainment Corp.*, the court concluded that a protective order prohibited "all uses of information deemed confidential except one: the parties' analysis of issues presented in this litigation." 976 F.Supp. 917, 923 (N.D. Cal. 1997). A few district court cases applying a definition of "use" that most courts find "absurd," and that Kenvue does not directly defend, are good reasons for this Court to embrace Appellants' sensible definition of "use."

Finally, Kenvue argues that Appellants' position would make "use" and "disclosure" coterminous. Opp.28. That is incorrect. An attorney could "disclose" confidential information without attempting to "employ" it, for example by including it on a public website or sharing it with friends. *See* A-592 (addressing obligation to prevent unintentional disclosure "via the Internet"). Conversely, a defendant might seek separate "use" prohibitions to guard against a party's submission of confidential information in a different court, in a form readable by the second court, but argue that such conduct does not constitute "disclosure" because it is filed under seal. Protective orders are not statutes, which must be construed to prevent superfluity; they are orders proposed by

parties, and defendants may include "belt and suspenders" language to protect their interests. That is no reason to adopt an absurd reading of "use."

Kenvue's difficulty defining "use" is particularly significant in the context of a sanctions order. Appellants respectfully submit that their interpretation of "use" is correct. But if the Court disagrees, Kenvue's position falls well short of the "clearly articulated order" necessary to support a finding of willfulness and issuance of sanctions under Rule 37(b). *J.C. v. Zimmerman*, 150 F.4th 136, 146 (2d Cir. 2025). That so many persuasive authorities define "use" the same way as Appellants, characterizing the contrary reading as "absurd," reveals that Kenvue's reading was hardly clear.

## III. Kenvue's Reading of Rule 37(b) Cannot Be Reconciled with the Plain Text.

Kenvue acknowledges that a district court may exercise its inherent authority to impose sanctions for protective order violations. Opp.46. The sole question here is whether a court may avoid this more stringent standard by invoking Rule 37(b). Kenvue's answer conflicts with the Rule's text.

*First*, the Rule applies only to "an order to provide or permit discovery." Rule 37(b)(2)(A). The Rule does not refer to "an order to provide or [that] permit[s] discovery," as Kenvue asks this Court to conclude. Opp.37-38.

*Second*, the Rule only allows sanctioning "the disobedient party, the attorney advising that party, or both." Rule 37(b)(2)(C). Appellants did not advise any party to be disobedient.

*Third*, the Rule only allows sanctions to be awarded by "the court where the action is pending." Rule 37(a)(2). No action was pending when the district court issued its decision.

### A. **The Protective Order Is Not an "Order to Provide or Permit Discovery."**

The Protective Order does not require any party "to provide or permit discovery." Rather, it restricts what recipients may do with discovery *after* it has been provided or permitted.

Kenvue's arguments rely on parsing a single word while ignoring the relevant phrase. Namely, Kenvue argues that "permit" means to "make possible" or "allow," so any order that makes discovery possible is an order that "permits" it. Opp.37-38. But Rule 37(b) does not focus on

effects, and it does not apply to every order "setting the parameters for—and thus allowing—discovery." Opp.44.

Rather, Rule 37(b) applies to "an order *to* provide or permit discovery." The use of the infinitive indicates that the object of the order is the party being commanded to act. In other words, "provide or permit" discovery does not describe the *effect* of the order, but what the order requires a party to do. The use of the infinitive "to" distributed across both verbs means that both verbs "provide or permit" have the same implied actor. On Appellants' natural reading, that actor is the *disclosing party* the order compels. Kenvue's reading requires a different actor for each verb. It treats "permit" as something the *order* does—an order *that* permits discovery. But it necessarily leaves "provide" as something the *party* does, because an order does not "provide" discovery. For the Rule to turn on effects, it would have to be rewritten as "an order to provide or that permits discovery."

Contrary to Kenvue's argument (Opp.40), Appellants' reading gives each verb its own meaning. The Rules address numerous situations in which a party may be ordered "to provide" discovery (answers, disclosures, documents) *or* "to permit" discovery (inspection, entry,

examination). A party served with a Rule 34 request must "permit the requesting party . . . to inspect, copy, test, or sample" designated items, Fed. R. Civ. P. 34(a)(1), or "permit entry onto designated land," Rule 34(a)(2). Rule 37 itself authorizes a motion to compel when a party "fails to permit inspection." Rule 37(a)(3)(B)(iv). An "order to provide or permit discovery" is an order directing a disclosing party to do one or the other.

Kenvue does not help its argument by observing that Rule 37(a) references orders "compelling" production. Opp.40-41. Rule 37(a) governs motions to compel. Rule 37(b)(2) uses "provide or permit" to reach orders compelling production *and* inspection-type discovery. The different wording reflects the Rule's coverage of both forms of compelled discovery. It does not create a third category of orders that compel nothing.

The 1970 advisory committee's notes support Appellants' position. They begin by explaining that "Rule 37 provides generally for sanctions against parties or persons unjustifiably resisting discovery." Rule 37 advisory committee's note to 1970 amendment. A party who violates a protective order is not "unjustifiably resisting discovery." *Id.* The notes then reference "Rule 26(c) as revised" because the 1970 amendments added what is now Rule 26(c)(2). The Rule 26 notes explain that when a

court "is disposed to deny" a protective order, it "may go a step further and issue an order to provide or permit discovery," which "will bring the sanctions of Rule 37(b) directly into play." Rule 26(c) advisory committee's note to 1970 amendment. If the protective order itself were already enforceable under Rule 37(b), that "step further" would be unnecessary. *See* OB.51-52 & n.5. Kenvue calls this reading "tenuous" (Opp.46), but does not address the Rule 26(c) note or the statement that Rule 37 addresses "persons unjustifiably resisting discovery." Rule 37 advisory committee's note to 1970 amendment.

Kenvue argues that Rule 37(b)(2)(A)'s reference to "an order under Rule 26(f)" shows the Rule reaches orders "setting the parameters for" discovery. Opp.43-44. The opposite is true. The Rule lists three examples that all describe situations where a party is ordered to give discovery:

- a Rule 37(a) order compels disclosures, answers, production, or inspection;
- a Rule 35 order requires a party to submit to a physical or mental examination; and
- a Rule 26(f) order can require the disclosure of specific information on a set deadline; *i.e.*, the provision of discovery.[1]

---

[1] When the reference to Rule 26(f) was added, Rule 26(f) called for the court to hold a discovery conference and issue orders that would include

Kenvue's own examples prove the point. It cites orders setting deadlines and designating custodians. Opp.44 (citing ECF 340). Those orders tell a party when and from whom it must produce. The order in *Zimmerman* was a production deadline, and the violation was producing a day late. 150 F.4th at 146 & n.6.

The text tracks a practical reality: an "order to provide or permit discovery" involves an objective command to a *disclosing* party to provide specific information or permit inspection, typically one reached *after* the parties have already litigated the scope of a dispute that the court has resolved. If the losing party *still* does not comply with the court's order, a lower standard for sanctions is sensible. Parties who flout such orders

---

concrete deadlines for specific discovery. Rule 26(f) (1980) (am. 1993). After the 1993 amendments, Rule 26(f) only requires the parties to confer; the resulting orders governing discovery are issued under Rule 16. Rule 26(f)(1)-(3); Rules 16(b)(1), (b)(3)(B). However, courts continue to refer to a case management order that requires a Rule 26(f) conference and disclosures under Rule 16 and Rule 26(a) as a "Rule 26(f) Order." *See, e.g.*, *Blake v. R&B Corp. of Va.*, No. 4:23-cv-66, 2023 WL 4646102, at *3 (E.D. Va. July 20, 2023) ("The Rule 26(f) Order sets the deadlines for, among other things, the Rule 26(f) conference between the parties and the Rule 26(a) disclosures."); *Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*, No. 16-cv-13456, 2019 WL 3229749, at *6 (E.D. Mich. July 17, 2019) ("BesTop has never provided the specific contention information required by the Rule 26(f) Order."). Rule 26(f) Orders are thus easily capable of being orders to provide or permit discovery.

are not like Appellants, who had a good-faith interpretation of an order that the district court had not yet interpreted.

Consider that the district court has a standing order stating that "[a]ny party wishing to raise a discovery dispute with the Court must first confer in good faith with the opposing party, in person or by telephone, in an effort to resolve the dispute." *E.g.*, Cote Ind. Pracs. 2(C). If Kenvue had purported to confer before filing a motion to compel, but Appellants argued that Kenvue did not confer adequately, and the court agreed with Appellants, would sanctions on Kenvue's counsel be governed by Rule 37(b)? Clearly not. The standing order facilitates the provision of discovery at least as much as a protective order. But it does not order either party "to provide or permit" it.

Kenvue attempts to confine *Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1323 (11th Cir. 2001), to subpoena-narrowing orders (Opp.41), but *Lipscher*'s holding covers Rule 26(c) protective orders as a class, and courts continue to apply it that way. *E.g.*, *Fontainebleau Fla. Hotel, LLC v. Jacob*, No. 25-CV-20251, 2026 WL 548040, at *4 (S.D. Fla. Feb. 27, 2026) (Rule 37(b)(2) "authorizes sanctions only for failures to obey orders that compel the provision or permitting of discovery," and a protective

order, "which restricts rather than compels discovery," "does not fall within that scope.").

The Seventh Circuit applies the same principle. In *Evans v. Griffin*, it rejected Rule 37(b) sanctions for violating a scheduling order and an order granting *leave* to depose, because "[n]either of those orders compelled [the plaintiff] to answer any questions, produce any documents, or sit for a deposition." 932 F.3d 1043, 1046-47 (7th Cir. 2019). Such orders may "serve perfectly well as case-management and scheduling orders, but they are a far cry from the targeted order requiring compliance with a particular discovery request." *Id.* Kenvue dismisses *Evans* as not involving a protective order (Opp.41-42), but its reasoning forecloses Kenvue's "makes possible" test.

Kenvue's contrary authority largely did not even assess whether Rule 37(b) applied. *See Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983); *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910-11 (9th Cir. 1986); *see also In re Terrorist Attacks on Sep. 11, 2001*, 152 F.4th 396, 403 (2d Cir. 2025). *Westinghouse* addressed the question only in dicta, relying on the 1970 notes without considering Rule 26(c)(2). *Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*,

992 F.2d 932, 935 (9th Cir. 1993); *see also Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 & n.4 (5th Cir. 2012) (relying on 1970 advisory committee's notes to justify application of the rule). Kenvue's remaining authority did too. Opp.39-40 (collecting district court decisions that do not engage with the text).[2] Its cases are only as good as the underlying reasoning, which is to say, not persuasive at all. Finally, Kenvue's suggestion that construing Rule 37(b) by its terms would leave protective orders "redressable only under non-Rules powers" (Opp.46), is no objection at all. That is the more appropriate standard given the substantive distinction between disputes that have already been adjudicated before the violation and ones that have not been. And that is how courts in the Eleventh Circuit have enforced protective orders for twenty-five years since *Lipscher*.

[2] *Daval Steel Products v. M/V Fakredine* does not help Kenvue: it merely held that Rule 37(b)(2) is not limited to formal Rule 37(a) orders. 951 F.2d 1357, 1363 (2d Cir. 1991). Appellants have never argued otherwise. Rule 26(f), Rule 35, and Rule 26(c)(2) orders are all covered. The question is whether the order requires a party to provide or permit discovery, and *Daval Steel* itself framed the inquiry as whether the party violated "a clearly articulated order of the court requiring specified discovery." *Id.*

### B. Appellants Did Not "Advise" a Disobedient Party.

Rule 37(b)(2)(C) permits a fee award against *only* two categories of persons: "the disobedient party" and "the attorney advising that party." The Rule does not authorize sanctions against "a disobedient attorney" or a "disobedient law firm."

This textual choice was not an accident; when the Rules mean to reach an attorney or law firm directly, they say so. *See* Rule 11(c)(1) ("any attorney, law firm, or party that violated the rule"); Rule 16(f)(2) ("the party, its attorney, or both"); Rule 26(g)(3) ("the signer"). The text of Rule 37(b)(2)(C) follows from the kind of order Rule 37(b) enforces. An order to "provide or permit discovery" runs to a party; an attorney can be responsible for its violation only by advising the disobedient party. OB.57 n.7. A protective order, by contrast, binds attorneys directly; Rule 37(b) does not address attorneys directly because it does not apply to protective orders. *Supra* Part III.A.

The nonbinding decisions on which Kenvue relies provide no basis for disregarding the Rule's text. In *Smith & Fuller*, the sanctioned attorney and law firm never argued that they were not the proper persons for Rule 37(b)(2)(C) sanctions, so the Fifth Circuit did not consider the

question. 685 F.3d at 487-90. Similarly, *Poliquin v. Garden Way, Inc.*, imposed sanctions without analyzing the Rule's categories. 154 F.R.D. 29, 31 (D. Me. 1994). And *Bartlett* did not concern Rule 37 sanctions at all. 2024 WL 5168734, at *4. Questions that "merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).

On the undisputed record, Mr. Keller is not "the disobedient party" or "the attorney advising that party." He is not a "party" in any action. And he did not advise Texas to make the filing in question. A-742 ¶ 16.[3]

Blocked by the undisputed facts, Kenvue pivots to a new theory on appeal: the "MDL Plaintiffs," not Texas, were the disobedient parties, because Appellants' conduct in Texas "rendered the MDL Plaintiffs out of compliance with the Protective Order." Opp.52. The district court made no such finding; it never identified a disobedient party at all. SPA-12-20.

---

[3] The supervising attorney in *Stuart I. Levin & Associates, P.A. v. Rogers*, 156 F.3d 1135 (11th Cir. 1998), represented a client who ignored repeated orders compelling discovery, a paradigmatic Rule 37 case. At most, that case holds that an attorney who fails to secure his client's compliance with outstanding discovery orders can be liable. It says nothing about whether an attorney whose client is not even accused of disobeying an order can be sanctioned.

And the theory fails on its own terms. The Texas filing was made on behalf of the State. If the MDL Plaintiffs are now the "disobedient part[ies]," they somehow disobeyed by doing nothing. Kenvue's theory simply relabels Mr. Keller's *colleague*'s conduct as a party's conduct, then imputes that conduct to Mr. Keller.

Kenvue also appears to argue that the phrase "attorney advising that party" need not refer to the attorney giving advice to violate the order. On Kenvue's telling, a court can apparently sanction *any* attorney who advises a disobedient party on any topic. Opp.49-51. That is, in a word, preposterous. If Kenvue violated the district court's order to produce documents, could the court have sanctioned its attorneys advising it on an M&A transaction or a tax matter? What about lawyers who strenuously urged compliance but were ignored by their client? Are they subject to presumptively *mandatory* sanctions? The natural reading of the Rule applies only to the attorney who advised a disobedient party *to disobey*.

Kenvue's disregard for text is even starker as applied to Keller Postman. Keller Postman is not a party and is not an attorney. The Sixth Circuit correctly held that "Rule 37 does not allow for sanctions against

a law firm, unless it is a party." *NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369, 383 (6th Cir. 2022). Kenvue's only response is that *NPF* relied on "abrogated" precedent. Opp.54. But *NPF acknowledged* that the 1993 amendment to Rule 11 superseded *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120 (1989), and relied on *Pavelic* only for its reasoning. *NPF*, 37 F.4th at 383 & n.13. That amendment, if anything, confirms *NPF*'s holding. The rulemakers responded to *Pavelic* by adding "law firm" to Rule 11. Rule 11(c)(1). Nobody has added "law firm" to Rule 37(b).

Kenvue also asserts that *NPF* "differs from how this Court has interpreted 'attorney'" under Rule 37 (Opp.54), but Kenvue's authority involves cases where the issue was not actually litigated.[4] A drive-by decision that does not even consider a question is no match for plain, unambiguous text.

Kenvue next retreats to waiver. Opp.51-52. But Keller Postman was sanctioned *sua sponte*. And Mr. Keller (and Mr. Masslon) submitted

---

[4] For example, *Kyros Law P.C. v. World Wrestling Entertainment, Inc.*, 78 F.4th 532 (2d Cir. 2023), and *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522 (2d Cir. 1990), did not consider whether Rule 37(b)(2)(C) authorizes sanctions against a firm, because no one raised the question.

unrebutted declarations making clear that Mr. Keller did not advise any client to make any filing in any particular manner. The district court accused Mr. Keller of attempting to deflect responsibility, SPA-19-20, which puts directly in play what sort of conduct an attorney is responsible for under Rule 37 in the first place. Given the district court's response to these factual submissions, this Court "may entertain additional support that a party provides for a proposition presented below." *Eastman Kodak*, 452 F.3d at 221.

In *Everytown for Gun Safety Support Fund v. ATF*, the Court rejected the very sort of waiver argument Kenvue is peddling. 984 F.3d 30, 38 n.4 (2d Cir. 2020). The Court held that appellant had "maintained throughout th[e] litigation" an overarching argument that certain data was "exempt from FOIA disclosure." *Id.* Here, Mr. Keller's sworn, unrebutted declaration was submitted to establish an overarching fact he "maintained throughout this litigation": that *he* did not advise Texas to make the relevant filing. That is intertwined with the textual point that Rule 37 does not create vicarious liability. Appellants repeatedly warned the district court that Rule 37 was inapplicable. They should not be unjustly sanctioned on a technicality about the level of generality

accompanying those repeated warnings, particularly when the district court did not bother to hold oral argument or an evidentiary hearing that might have further elucidated these issues.

### C. Rule 37(b) Did Not Authorize the District Court to Impose Sanctions When No Action Was Pending.

Rule 37(b) only allows sanctions to be "sought in the district where the action is pending." Rule 37(b)(2). Kenvue does not identify a single action that was pending when the district court ruled. A docket number is not an action, and the show-cause order Kenvue cites took *new* actions by plaintiffs *not* represented by Keller Postman attorneys and dismissed them almost as soon as they arrived. OB.16 n.1; ECF 1394. Kenvue's suggestion that the master pleadings merged every case into one "action" (Opp.48-49 n.8) ignores Supreme Court precedent. *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015). The district court expressly disavowed any intent to mash all of the actions together, *id.* at 413 n.3, which would have destroyed diversity jurisdiction. ECF 11 at 1-2; ECF 238 at 3. Regardless, whether Keller Postman represented clients in many actions (it did) or one monolithic MDL action (it did not), it is undeniable that *all* of Keller Postman's clients were dismissed from the

district court and on appeal in this Court when the sanctions order issued. Either way, there was no relevant action pending.[5]

Kenvue again retreats to waiver, but the argument fails for the same reasons as before. *See supra* pp.28-29. Whether Rule 37 applies is a pure question of law, and "[a]rguments made on appeal need not be identical to those made below if they involve only questions of law and additional findings of fact are not required." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 80 (2d Cir. 1993).

## IV. <u>**The District Court Abused Its Discretion to Find Willfulness.**</u>

Kenvue claims the district court's willfulness finding is no basis for reversal because willfulness "was not required" to impose sanctions. Opp.55. But regardless of whether a court is *required* to find willfulness to impose sanctions, the district court here did so and weighed that factor in its decision. SPA-16-20. This Court is well within its authority to

[5] *Heinrichs v. Marshall & Stevens Inc.*, 921 F.2d 418, 421 (2d Cir. 1990) (per curiam), does not help Kenvue. It permits post-judgment fee awards for discovery violations committed in the pending action, not sanctions for conduct in another court.

review that finding for abuse of discretion. *Flaks v. Koegel*, 504 F.2d 702, 707-09 (2d Cir. 1974).

The record here cannot support the district court's conclusion that Appellants acted willfully. Mr. Keller submitted sworn testimony that he believed he complied with the Protective Order. A-742; A-767-69. As explained above, *supra* Part II, that belief was hardly unreasonable. Nothing in the record refutes that evidence, and the district court failed to conduct an evidentiary hearing and so had no basis to make an adverse credibility finding.[6] That uncontroverted record cannot support a finding of willfulness. *See In re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d 731, 732 (2d Cir. 1992) (per curiam) ("If we are to be satisfied that a district court has properly exercised its discretion, we must be informed by the record of why the district court acted as it did.").

The presence or absence of willfulness matters. Sanctions are *not* required if the opponent can show its actions were "substantially justified" or that an award of sanctions would be "unjust." Rule

---

[6] Kenvue falsely claims (Opp.61 n.10) that this Court has held that an affidavit "suffices" for a hearing. What this Court actually held is that no hearing was necessary when appellants failed to even "*respond* to the motion for sanctions." *Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1286-87 (2d Cir. 1994) (emphasis added).

37(b)(2)(C). *Ex ante* action based on a good-faith reading of an order, even if that reading is held erroneous *ex post*, is "justified," making an award of sanctions "unjust." The district court needed to find willfulness to avoid grappling with that text, as an *intentional* violation of an order is never "justified." That is precisely why the erroneous willfulness finding was anything but harmless.

## V. <u>Reassignment Is Permitted and Warranted.</u>

Kenvue argues that a court of appeals "lacks authority to reassign an MDL." Opp.62. No case says so. The only authority Kenvue musters refused to decide the issue. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1272 (11th Cir. 2021) ("[W]e need not decide that question . . . .").

This Court has authority to order reassignment because that power flows from the same authority it has to review this case in the first instance. A "court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may . . . require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106.

The authority of the JPML to assign a case initially does not touch this statutory grant of appellate power. A "[f]ederal appellate court['s] ability to assign a case to a different judge on remand rests . . . on the appellate courts' statutory power to 'require such further proceedings to be had as may be just under the circumstances.'" *Liteky v. United States*, 510 U.S. 540, 554 (1994) (quoting 28 U.S.C. § 2106). If this Court has the power to "vacate, set aside or reverse" the decision below, as Kenvue concedes, it also has the remedial authority encompassed by the next clause of § 2106, which includes the power to order reassignment.[7]

Kenvue is also wrong to suggest that the standard for reassignment is not met. There is no requirement that *every* factor this Court considers be satisfied. *Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 147 (2d Cir. 2000) (granting reassignment based on one factor). Regardless, all three reassignment factors are met. The first factor is satisfied because the district court injected its *own views* into this case at the Rule 702 stage,

[7] Kenvue notes that Appellants did not seek recusal in the district court. Opp.63-64 n.12. But reassignment and recusal are distinct remedies, *Liteky*, 510 U.S. at 554, and a party seeking reassignment on remand need not have first sought recusal in the district court. *Ligon v. City of New York*, 736 F.3d 118, 129 n.31 (2d Cir. 2013) (per curiam) (collecting cases), *vacated in part on other grounds*, 743 F.3d 362 (2d Cir. 2014).

resulting in a litany of over twenty specific errors identified by this Court. OB.67-68. And the district court's disparate application of its own rules in dealing with Kenvue's sanctions motion evinces "difficulty in putting out of . . . her mind" the positions Appellants have put forward. OB.68.

The second factor is satisfied based on ample evidence that would lead any reasonable person to question the tribunal's impartiality. *See* OB.67-68. Kenvue protests that the district court ruled in favor of plaintiffs at the pleading stage. That is no defense of the sequence that followed: the district court departed from normal judicial practice to seek input from the FDA and require plaintiffs to propose labeling language not required by any source of substantive law. Upon learning that the FDA did not support a labeling change, the district court decided every significant issue against plaintiffs. OB.66-68. The district court's conduct in dealing with this sanctions motion—finding *inarguable* violations that even Kenvue won't defend, applying procedural rules to one side but not the other, and finding willfulness, a culpable mental state, without a hearing and in the face of uncontroverted declarations, OB.67-68—supports the conclusion that "reassignment is advisable to preserve the appearance of justice." *Mackler Prods.*, 225 F.3d at 147.

The third factor is similarly satisfied as any "waste" is clearly outweighed by "preserving the appearance of fairness." *Id.* The MDL was active for just twenty months before the district court's erroneous *Daubert* ruling rendered it dormant, and only involved the narrow issue of general causation. Regardless of which district judge is overseeing the MDL, the next steps for the litigation will be new, dampening any concerns about waste and efficiency.

## CONCLUSION

The district court's order should be reversed and the MDL reassigned.

November 13, 2026

Respectfully submitted,

*/s/ Warren D. Postman*

Warren D. Postman
KELLER POSTMAN LLC
1101 Connecticut Avenue NW
Suite 1100
Washington, DC 20036
Tel.: (202) 918-1123
wdp@kellerpostman.com

## CERTIFICATE OF COMPLIANCE

This reply brief complies with the type-volume limit of Second Circuit Rule 32.1(a)(4)(A) because it contains 6,984 words, excluding those parts exempted by Federal Rule of Appellate Procedure 32(f).

This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it uses 14-point Century Schoolbook font.

November 13, 2026

*/s/ Warren D. Postman*
Warren D. Postman